# Eaton's Appeal.
# Cree's Appeal.

1. A bill for account between partners averred that the plaintiff and two defendants had equal interests; one defendant answered that he had four-ninths, the plaintiff two-ninths and the other partner three-ninths; the answer was responsive.

2. When the plaintiff calls on the defendant to answer the allegations of the bill, he makes defendant a witness for that purpose but for no other.

3. The defendant is bound to set out whatever constitutes a part of the facts stated in the bill.

4. The defendant cannot make himself by his answer a witness generally and introduce other facts either in avoidance or defence.

5. A test as to the answer being responsive is, whether the respondent could on cross-examination as a witness at law, be examined as to the matter he states in anticipation of his defence.

[Eaton's Appeal.]

6. The defendant must answer every material allegation in the bill whether specially interrogated thereto or not.

7. Part of a fact or contract is not the truth; nor if the terms of a contract are different.

8. Another subsequent, independent, and distinct fact not stated in the bill is not responsive.

9. If the whole allegation in the answer might have been left out it is not responsive to the bill.

10. If the omission of some statement would furnish ground of exception to the answer, the statement to the extent to which it is required, whether negative or affirmative, is responsive.

11. Partners dissolved having an unexpired lease, two of them continued in the business, occupied part of the leased premises and sub-let the remainder; the rental value increased. *Held*, that in a settlement they were chargeable with the increased value and not merely with what the unexpired term was worth at the dissolution.

12. In stating an account between a plaintiff partner and two defendants, the master should find not only what was due the plaintiff, but also state an account between the defendants.

13. The decree on a bill for settlement of a partnership account should make an end of the whole matter.

November 9th 1870.   Before Thompson, C. J., Read, Agnew, Sharswood and Williams, JJ.

Appeals from the Court of Common Pleas of *Allegheny county:* In Equity: Of October and November Term 1869, No. 196 and 197.

In the court below James W. Cree, on the 15th of September 1865, filed a bill against Franklin H. Eaton and Nathaniel G. Macrum.   The bill set out:—

1, 2 & 3. About September 1858, the plaintiff and defendants formed a partnership in the trimming business, in which they had equal interests of one-third each; and it continued until the 1st of February 1861, when it was dissolved by mutual consent.

4. The defendants, on the dissolution, took charge and possession of the property and assets of the firm, and undertook the settlement of its business.

5. Charles Brewer, on the 14th of February 1859, leased to the firm a storehouse, &c., on Fifth street, Pittsburg, in which the business was conducted till the dissolution; the defendants afterwards occupied part of it for their own business, and became chargeable with the value of the rent for such part; they underlet the remainder and received the rent from it, and there was a surplus in their hands after paying Brewer, the landlord; the unexpired portion of the term is valuable, and if sold would realize a large profit.

7 and 8. There has been no settlement, and the defendants refuse to settle; on a settlement there would be a balance due complainant.

The prayers were that the defendants answer the charges in the bill; that an account be taken of the partnership transactions, and that the defendants be decreed to pay the plaintiff what may be

due him; that it be decreed that the unexpired portion of the lease from Brewer, and the net profits, be divided between the plaintiffs and defendants, and for general relief.

The answer of Eaton denied that the "partners held equal one-third interests in said firm, its business and profits; but the interest of the complainant was solely and only an interest of two-ninths in the profits of the business; that the interest of this defendant was four-ninths of the profits, and that of N. G. Macrum was three-ninths of the profits; and that the entire capital of the concern was put in and owned by the said defendants." It admitted the lease from Brewer, and averred "that the firm, during its continuance, occupied a portion of said building and rented other portions, and such has been the case since the dissolution of the firm; that during the first five years of said lease, the rent paid to landlord had reference to the cost of the building, included expense of repairs and insurance as part of the rent, and amounted probably in all to $2900 per annum; that since April 1st 1864 the rent paid consisted of a money-rent of $3200, and insurance and repairs, making a total of about $3400; that during the continuance of the firm, the rents paid the firm by the sub-lessees amounted to $2160, and the amounts received since the dissolution from tenants have amounted to $8710." It averred that the complainant was largely in debt to the firm, and had refused to pay it; respondent has always been ready and willing to settle. The other allegations of the bill were admitted. Macrum answered amongst other things, that he "was the owner of one-third of the capital stock, and entitled to one-third of the profits of said copartnership. That the plaintiff did not furnish any of the capital stock of said copartnership, and the defendant does not know from his own knowledge what interest the plaintiff had in the profits; but he was informed by F. H. Eaton, with whom the plaintiff made the arrangement, that his interest in said profits was two-ninths."

The other parts of his answer were substantially the same as Eaton's.

A replication was filed January 18th 1866. On the 20th, on motion of the plaintiff, it was decreed that an account be taken of "the copartnership dealing and transactions of said parties." Thomas C. Lazear, Esq., was appointed examiner and master. The facts of the case necessary to be referred to are found in his report. He reported:— * * *

"There appeared to be no dispute between the parties as to the accounts between them, as exhibited on the firm books.

"The only matters which seemed to be in controversy before the master, and to which all the evidence adduced before him had relation, resolved themselves into two questions—

"1. As to the extent of the plaintiff's interest in said firm; and

" 2. As to the liability of the defendants to account with the plaintiff for the value of the lease aforesaid, and the rents received from the sub-lessees of the said demised premises since the date of said dissolution.

" As regards the question of plaintiff's interest in the firm, the answers of both defendants are responsive to the allegations of the bill in that particular, and the master is of opinion that those answers have not been overcome by sufficient evidence to justify him in finding to the contrary thereof. The only direct evidence offered for that purpose was the testimony of Thomas K. Cree, in connection with which the plaintiff's counsel relied upon the legal presumption of an equality of interest arising between all partners in the absence of any agreement to the contrary, and also upon the fact that nothing appeared upon the books of the firm inconsistent with this legal presumption; and upon the further fact, that after the retirement of the plaintiff from the firm, a new firm was immediately formed between the defendants and one James D. Carlisle, at the same stand, and in the same business, in which all shared equally in the profits, notwithstanding the incoming partner contributed no cash capital to the concern. Now the testimony of witness Cree, on that point, merely relates to a conversation between him and Mr. Eaton, one of the defendants, in which he says that the latter admitted that the plaintiff and the defendants were equally interested in the firm, except that the defendants had put capital into it, and the former had not. This testimony of course varies from what Mr. Eaton says in his answer to the bill, but the master thinks that not much reliance should be placed upon admissions of parties in ordinary conversation, in opposition to their solemn denial under oath. And in regard to the other facts referred to as corroborative of the testimony of this witness (Cree), including the absence of any agreement between the parties, defining their respective interests in the firm, and the usual presumption in such cases, it is perhaps enough to say that they are not, by any means, irreconcilable with the answers of the defendants denying the inference which might otherwise be drawn from those facts, and are therefore not contradictory to their answers in that respect.

" The master accordingly finds that the interest of the plaintiff in said firm was not the one-third part, but only the two-ninths therein.

" And as there is no dispute between the defendants as to their respective interest in said firm, he further finds, in accordance with their answers, that the interest of F. H. Eaton, in said firm, was the four-ninths, and of N. G. Macrum the three-ninths therein.

" But the question of greater difficulty with the master is the

[Eaton's Appeal.]

one referred to respecting the lease aforesaid.   The facts bearing upon this question appeared from the evidence to be as follows:

" Upon the dissolution of the said partnership between the plaintiff and defendants (which then and for some time before had been carried on under the name and style of Eaton, Cree & Macrum), it was agreed between said parties, that the business of said firm should be settled by the defendants.   The defendants accordingly undertook the settlement thereof, but (as before stated) they immediately thereafter entered again into copartnership with one James C. Carlisle, in the same business and at the same stand, the style of said new firm being Eaton, Macrum & Co.   The portion of the Brewer building (the said demised premises), which this new firm occupied (and being the same which had previously been occupied by Eaton, Cree & Macrum) consisted of the first and second stories, together with the cellar of the stand known as No. 17, and also the second story of No. 19." * * *

The master then stated the sub-lettings, &c., by the defendants.

" On the 1st of July 1865 the said firm of Eaton, Macrum & Co. also dissolved partnership, and a new firm was then formed between N. G. Macrum (one of the defendants) and the said James C. Carlisle, under the style of Macrum & Carlisle, and F. H. Eaton (the other of said defendants) went into business alone, but all continued to occupy the said Brewer building, the firm of Macrum & Carlisle taking possession of the first and second stories with the cellar of No. 19, and also the second story of No. 17, except a small passage-way fifteen feet in width on the second floor of No. 17 ; and F. H. Eaton taking possession of the first floor, with cellar of No. 17 and the small passage-way referred to.   These parties (Macrum & Carlisle and F. H. Eaton) have ever since been in possession of said premises, respectively, down to the present time.

" The firm of Eaton, Macrum & Co., during its existence, collected all the rents from said sub-lessees as the same accrued from time to time, and also paid what became due to the estate of Charles Brewer, deceased, under the lease aforesaid; and after the dissolution of said firm, Macrum & Carlisle and F. H. Eaton, have each received the one-half of the rents owing by said sub-lessees and paid the one-half of the rents due to the Brewer estate.

" The lease aforesaid of said Brewer building was never put up at auction, nor is there any evidence that the defendants, after the dissolution of the firm of Eaton, Cree & Macrum, ever adver tised the same for sale or otherwise endeavored to procure a bonus for it.   It merely passed into the possession of Eaton, Macrum & Co. almost immediately after the dissolution of Eaton, Cree & Macrum, without any written or formal transfer thereof, and without even a special mention of it among the assets purchased

by Eaton, Macrum & Co. from the defendants, as liquidating members of the old firm; nor was any consideration whatever given for it, although Mr. Carlisle, the incoming partner, says that this lease was held out to him as an inducement for going into the new firm, and was part of the assets transferred to it.

"It was claimed by the counsel for the defendants that inasmuch as the weight of evidence showed that the lease in question would not have brought a bonus, if offered for sale in 1861, they should therefore not be required to account for any increase which may have happened in the value thereof afterward. In other words, they maintained, that the question of the defendants' liability thus to account with the plaintiff for said lease must be determined in reference to the *time of the dissolution of the firm of Eaton, Cree & Macrum,* and as then the lease (as they contended) had no marketable value, they had a right to transfer it, along in the other property, to the new firm of Eaton, Macrum & Co. without demanding payment of compensation for it, and that they are, therefore, not bound now to account with the plaintiff for any subsequent increase in the value thereof.

"The master, however, cannot concur in this view of the law, but is of opinion that as the defendants made no attempt to sell the lease, except to the new firm, of which they themselves were members (and which was rather a transfer than a sale, if entitled to be called by either name), nor used any effort, by advertisement or otherwise, to ascertain if it even had a marketable value, they must now be accountable for all the profits and advantages they have since derived from it, especially as the plaintiff was never in any way indemnified by them for any loss he might be put to by reason of his continued liability on said lease." ＊ ＊ ＊

After stating other facts as to the amounts received by defendants for rent, &c., he found that the amount of the firm assets was $24,685.20; that the amounts due to the partners, respectively, after charging them with what they had already drawn from the firm assets, were:—

| | |
|---|---|
| To Cree . . . . . . . . . | $  1095.41 |
| To Eaton . . . . . . . . . | 10,267.15 |
| To Macrum . . . . . . . . . | 6287.44 |

He further said in his report: "Possibly the account stated by him, as between them, is defective in not stating in what proportions they should pay the balance which the master has found in his report to be due from them to the plaintiff. This omission can readily be supplied. For as the shares or interests of the defendants in said firm were as follows: Eaton the four-ninths and Macrum the three-ninths, their proportions of said indebtedness should therefore be as follows: Eaton, four-sevenths thereof, or $625.95; and Macrum, the three-sevenths thereof, or $469.46."

[Eaton's Appeal.]

The plaintiff Cree excepted to the report, that the master should have found that his interest in the partnership was one-third, and that the defendants should have been charged with more rent.

Eaton excepted that the master reported the lease as part of the assets of the partnership; that the amount charged as the value of the lease was too large; that he did not report "an account between all the parties. The master should state and report an account between the two defendants. The account now settled should include the entire account between each partner and the firm, and between the respective partners."

The court confirmed the master's report, and decreed that the defendants pay the plaintiff $1095.42, in the following proportions, to wit, that said F. H. Eaton shall pay the sum of $625.95, and that said N. G. Macrum shall pay the sum of $369.47."

Cree and Eaton appealed from the decree.

Cree assigned for error the confirmation of the master's report, specifically that part which found that his interest was but two-ninths.

Eaton assigned for error the confirmation of the master's report in finding that the lease was part of the assets of the partnership; in the value at which he charged the lease and his mode of ascertaining its value, and that he did not state an account between the defendants.

*D. Reed* and *G. Shiras, Jr.*, for Eaton, referred to 3 Greenl. Ev. § 28, 29 and note.

*M. W. Acheson*, for Cree.—Partners are presumably entitled to equal shares: Collyer on Part. § 167 and note; 3 Kent's Com. 28, 29; Story on Part. § 24 and notes; Pars. on Part. 258, *et seq.* Where the presumption is in favor of one party, the other must disprove it: 2 Danl. Ch. Pr. 848. Circumstances may be sufficient to overcome a denial in the answer: Id. 840; Brightly's Eq. § 722; 3 Greenl. Ev. § 289; Clark *v.* Van Riemsdyk, 9 Cranch 153; Baker *v.* Williamson, 4 Barr 468. The defendants were not interrogated as to their interests, and therefore the answer was not responsive: 2 Danl. Ch. Pr. 840; Jones *v.* Best, 2 Gill 106. A lease to a firm is assets: Collyer on Part. § 136; Parsons on Part. § 386.

The opinion of the court was delivered, January 3d 1871, by

SHARSWOOD, J.—These are appeals by different parties from the same decree. It was a bill in equity for an account of the transactions of a partnership in which there were three members. The plaintiff alleged that each partner had an equal interest. The answer of one of the defendants denied this positively, and averred that the interest of the plaintiff was only two-ninths, the

other partner three-ninths, and his own interest four-ninths. The first and most important question in the cause is, whether this answer is responsive to the bill, and entitled therefore to the weight assigned to it by the well-settled rule of evidence in equity, that an answer responsive to the bill can only be overcome by the testimony of two witnesses, or of one witness corroborated by circumstances elsewhere in evidence. We must lay aside the answer of the other defendant, because, as to this point, he does not speak of his own knowledge, but from information and belief only. Such an answer is not evidence even; it is pleading merely, and puts in issue the fact in dispute.

We agree with the master in the opinion that the answer of Eaton is responsive. The question is one often very nicely balanced, and the decisions upon the subject are numerous and not harmonious. I will not undertake here an exhaustive examination of them all or even the greater number. But after considerable research and comparison, there are some principles and rules to be deduced from them sufficient to decide satisfactorily the matter now in dispute.

When the plaintiff calls upon the defendant to answer the allegations contained in the bill, he makes him his witness for that purpose only, but for no other. Whatever constitutes in truth a part of the facts stated in the bill, the defendant has a right, and indeed is bound to set out. But he cannot make himself a witness for himself generally, and introduce other facts either in avoidance or defence. It is considered indeed as a test whether, as a witness on examination, he could be cross-examined as to the matter which he states in anticipation of his defence on a trial at law: Dunham *v.* Gates, 1 Hoffman's Ch. Rep. 185. Thus if a plaintiff state an act, transaction or contract as the foundation of his' equity, the defendant has a right to state the whole of such act, transaction or contract as in truth it was. Otherwise a plaintiff by giving only part of a contract, if the defendant must admit that part, and cannot go on to describe truly all the parts of it, the grossest injustice might be done. The defendant must answer every material allegation in the bill, whether specially interrogated thereto or not, and unless he states the act or contract fully, as it truly was, how can he conscientiously swear that the facts in his answer are true ? Half a fact or half a contract is not the truth. Neither is it true if in truth the terms of a contract are different. But another subsequent, independent and distinct fact, not stated in the bill, is not responsive, and therefore not within the rule.

A few of the many decisions may be referred to in support of these views. One of the earliest is Kirkpatrick *v.* Love, Ambler 589. There was a decree for a general account, both sides to be examined on interrogatories. Plaintiff admitted the receipt of a

parcel of satins, and in the same sentence swore that he had paid for them : in other words, that it was a cash transaction. It was held that the master was right in refusing to charge the plaintiff with the satins. The court put it upon the ground that the charge and discharge was in the same sentence; otherwise it had been if the discharge or avoidance had been in a distinct sentence. In Blount v. Burrow, 4 Bro. Ch. Rep. 75, Lord Hardwicke said: "If a man admits by his answer that he received several sums at particular times, and in the same answer swears he paid away those sums at other times in discharge, he must prove his discharge, otherwise it would be to allow a man to swear for himself and to be his own witness." Lord Chancellor Eldon, in Ridgeway v. Darwin, 7 Ves. 404, said, that "if a man admitted he had received certain sums, which sums he had paid, the discharge following immediately in the same sentence, that would do." And afterwards, more distinctly in Thompson v. Lambe, Id. 588, "A person charged by his answer cannot by his answer discharge himself; nor even by his examination, unless it is in this way: if the answer or examination states that upon a particular day he received a sum of money and paid it over, that may discharge him; but if he says, that upon a particular day he received a sum of money, and upon a subsequent day he paid it over, that cannot be used in his discharge; for it is a different transaction." These cases certainly cannot mean that if the defendant includes the fact of payment in the same sentence with the admission of the receipt, that alone will avail unless from the inference to be made—that they were both parts of one and the same transaction. Sir William Grant so states it in Robinson v. Scotney, 19 Ves. 582: "The instance usually put is that he received a sum of money and immediately handed it over." In Bellows v. Stone, 48 N. Hamp. 435, there is an able and exhaustive opinion by Chief Justice Parker. He declares the true distinction to be between allegations upon those subjects upon which the bill requires an answer, and allegations of new matter not stated or inquired of in the bill, but introduced by the defendant in his defence. Whether the plaintiff calls upon the defendant to make an answer which must directly deny or affirm some statement, or whether he requires him to make a statement of the facts upon the particular subject-matter, the principle is the same. If the answer which is required involve some statement favorable to the defendant other than matter merely in denial of the plaintiff's allegation, the defendant, being required to furnish that matter, is entitled to the benefit of it. An answer does not set up a fact "by way of avoidance merely" when it is only a response which the defendant is obliged to make to the bill of the plaintiff. He proceeds to lay down this as a test of the responsiveness of an answer. "If the whole subject-matter of the statement or alle-

gation in the answer might have been left out, then the allegation in the answer upon that subject is in no way responsive to the bill—the bill requiring no statement upon that point. But if the omission of some statement upon that subject would furnish just ground of exception to the answer, then the statement to the extent to which it is required, and whatever its character, whether affirmative or negative, is but a response to the requisition of the plaintiff." The same principles will be found further illustrated in Schwarz v. Wendell, Walker's Chanc. (Mich.) Rep. 267, and Cooper v. Tappan, 9 Wisconsin 361. In Ringgold v. Ringgold, 1 Harris & Gill 11, it is said that if the answer admit liability, there can be no escape from it but by proof, but everything it says with regard to the creation of the liability must be taken together; and in Allen v. Mower, 17 Vermont 61, "it is readily perceived that everything in the answer responsive to the bill as to the creation of the original liability charged must be taken together as part and parcel of one entire transaction." Accordingly, in Dunham v. Jackson, 6 Wend. 22, where a bill was filed to redeem stock, and it alleged the stock to have been pledged for a certain sum, and the answer stated that it was pledged at the same time for an additional sum, the answer was held to be responsive. Mr. Justice Marcy said: "Whether he has gone beyond what he was required to do may be tested, I think, by supposing an interrogatory inserted in the bill pointing to the very matter which he has answered, and he had refused to answer. Would the court have compelled an answer? Interrogatories are not a necessary part of the bill, nor are they to be answered unless they are such as are warranted by the premises and allegations of the bill. If the respondent had stopped after denying that the stock was pledged for the loan of $500, and refused to answer an interrogatory as to the amount for which it was pledged, because such interrogatory was not warranted by the bill, there would have been, it appears to me, very little difficulty in showing the answer to be insufficient. The defendant is bound to admit or deny the facts stated in the bill with all their material circumstances, without special interrogatories for that purpose."

Our own cases, as far as they have gone, conform to these principles. In Eberly v. Groff, 9 Harris 251, the bill charged that an assignment was without consideration. The answer denied that it was without consideration, and proceeded to set forth what the consideration was, and it was held to be responsive. There was indeed an interrogatory asking for the consideration, but that, as we have seen, did not make it responsive if in point of fact it was not so. So in Pusey v. Wright, 7 Casey 387, the present Chief Justice said: "If a contract be set forth, and the defendant be called on to answer it, a denial that it exists, *modo et forma*, would not be good, according to chancery practice; for this is

[Eaton's Appeal.]

subject to the implication that it existed in some other form. To avoid this the defendant should state how it existed, and wherein it had no existence." And, again : " It is not doubted but that if a different contract had been set up by defendants, which was alleged to have superseded the one charged by plaintiffs, they would have had the affirmative of the issue. The answer there would not have been responsive to the bill—it would have been by way of confession and avoidance, and have required proof. But the answer here admitted the contract and stated its terms, but denied the existence of stipulations in it alleged by the plaintiffs as the foudation of their claim for relief. This did not require the defendants to make proof, if the plaintiffs did not."

These principles and authorities amply sustain the conclusion of the master. In stating the terms of the contract of partnership the defendants were called on not merely to admit or deny it *modo et forma*, but to set out what were the terms agreed upon. They could have been asked specially upon an interrogatory based upon the statement of the bill to answer what the terms were, and this shows that the answer, though there was no interrogatory, was strictly responsive.

We are of opinion that the master was also clearly right upon the facts as found and reported by him in charging the defendants with the profits of the leasehold possessed by the firm at the time of the dissolution. It was, undoubtedly a part of their assets. The defendants did not dispose of it for what could then have been obtained for it, as they might have done. They kept and used it, and like any other article of property—a bale of merchandise, for example, if it afterwards increased in value and productiveness, the plaintiff, as joint owner, was entitled to his fair share of all the income and advantage derived therefrom—and the defendants were chargeable with a fair rent for the part used and occupied by them in their business.

But the report of the master is defective, as indeed he in part admits, in not stating the account as between each of the members of the firm. The decree might perhaps be amended from his report in ascertaining the sum due to the plaintiff by each of the defendants. But then it would not be complete. There is no account reported as between the two defendants. Without that it is necessarily incomplete—leaving them to a subsequent suit or proceeding. Between them there may be no dispute or difficulty, and they may, to save further costs, agree upon the amount. The decree on a bill for the settlement of a partnership account ought to make an end of the whole matter. For this reason the decree below must be reversed, and the record remitted for a further reference to the master and other proceedings thereon.

Decree reversed and record remitted.