William H. Haag *v.* Samuel G. Good et al., officers and
members of the Knights of Friendship of Reading, Pa.,
transacting business as an unincorporated association,
Appellants.

*Beneficial society—Refusal of relief—Application to courts of equity.*

While the law requires a member of a beneficial order first to exhaust
his remedies in the courts provided by the rules of the order, yet when a
member is denied a hearing, contrary to the fundamental law of the organi-
zation, such member is rectus in curia in applying to the courts of his state.
Relief will be afforded by the courts only so far and from such date as
compliance by the plaintiff member with the rules of his chamber estab-
lish a legal standing to appeal to the courts on refusal by the society of
an adequate hearing.

*Appeals—Practice, Superior Court—Defective assignment—Rules of
court.*

If any assignment embraces more than one point, or refers to more
than one bill of exception, or raises more than one distinct question, it
will be considered a waiver of all the errors so alleged; such assignment
violates Rule XV. and cannot be considered. The assignment in ques-
tion assigned for error the entire decree of the court which was complex
in its nature and separable in its directions.

Argued Nov. 9, 1897. Appeal, No. 42, Oct. T., 1897, by
defendants, from decree of C. P. Berks Co., No. 642, Equity
Docket, 1896, decreeing relief sought by plaintiff. Before
RICE, P. J., WICKHAM, BEAVER, ORLADY, SMITH and
PORTER, JJ. Decree modified and affirmed.

Bill, answer and proofs. Before ENDLICH, J.
The facts sufficiently appear in the opinion of the court.
The decree made by the court below was as follows:
[And now, to wit: March 15, 1897, the court orders and
decrees that the defendants above named do pay unto William
H. Haag, the plaintiff above named, the sum of $4.00 per
week, for a period of fifty-two weeks from the 20th day of
July, 1895, being six weeks prior to August 31, 1895, and the
sum of $2.00 per week for a period of thirty-four weeks from
the 18th of July, 1896, to the 13th of March, 1897, making a
total of two hundred and seventy-six dollars ($276), and that

the costs of this proceeding be paid by the plaintiff and defendants in equal shares.] [3] Defendants appealed.

*Errors assigned* were (1) in finding the following conclusion of law: "The notice given and demanded for investigation made by the plaintiff on August 31, 1895, required the association to proceed by appointment of a commissioner, etc., and upon its failure to do so, it was not necessary for plaintiff to appeal to the grand chamber before instituting this proceeding.   After February 23, 1895, as each week's award accrued, the failure of the society to pay entitled the plaintiff to give notice that he felt aggrieved by the withholding of awards from him, and when on August 31, 1895, he gave that notice the society was bound to act upon it.   The answer that he had a right to appeal to the grand chamber was not a compliance with its duty, and was in fact incorrect.   It is abundantly manifest from a perusal of the provision substantially recited in the third finding of facts that an appeal can be acted upon only where the proceeding by the appointment of a commissioner, the taking of testimony, and possibly the decision of the society has furnished a basis for it.   " Where there is no testimony reduced to. writing there is nothing for the committee on appeals to act upon.   As observed by the president judge, in his decision of Auman v. Hiester, C. P. Berks Co., No. 605, Eq. Dock. 1894, in organizations of this kind the usual and only course, upon appeal, is the examination of the papers.   The society, by its refusal to inaugurate the proceedings which its rule required of it, having deprived the plaintiff of the necessary basis of an effective appeal to the superior tribunal of the order, cannot now insist that he ought to have taken an appeal which, from the beginning, would have been doomed to failure.   Its action, in this particular, was irregular, contrary to its own laws, and subject to correction by this Court.   To hold otherwise would be to permit the defendant to gain an advantage by its own wrong.   Nor can it be claimed that the matter should now be referred for decision to the society.   The answer does not declare the readiness of its officers to proceed in the plaintiff's application, but denies his right to ask anything of the society. He cannot be required to submit to it a case thus prejudged." (2) In finding the following conclusion of law: "The plain-

tiff is entitled to a decree for awards, for a period beginning
six weeks prior to August 31, 1895. The right of a member
to give notice of dissatisfaction arises as each week's award
accrues and remains unpaid. As to each week's award, that
right continues for six weeks from the time when it was pay-
able, and is lost thereafter. The reason for such a provision
obviously is, that complaints are to be made and disposed of
while the facts can be readily ascertained and to prevent the
accumulation of large demands. The notice once being given,
however, necessarily holds good until the matter is disposed of.
This plaintiff, therefore, must be regarded as having waived his
rights to anything payable to him more than six weeks prior to
August 31, 1895, while including all within said period, and fix-
ing his right to claim thereafter. There is no provision in the
constitution or by-laws of this society restricting the right to
awards by reference to the funds in the treasury. Nor is there
any evidence that the society is not in funds. Hence the rule
in Toram v. Assn., 4 Pa. 519, does not apply, and the right of
plaintiff to a decree is not dependent upon his proving that the
society is able to pay." (3) In making the decree above re-
cited.

*C. H. Ruhl*, of *Ermentrout & Ruhl*, with him *J. E. Miller*, for
appellants.—That a member of a beneficial society must resort,
for the correction of an alleged wrong, to the tribunals of his
order before he can invoke the aid of a court of law or equity
is well settled by authority: Toram v. Beneficial Society, 4
Pa. 519; Com. v. Beneficial Society, 8 W. & S. 247; Sperry's
Appeal, 116 Pa. 391; Com. v. Union League, 135 Pa. 301.

The conclusion of the learned court below is erroneous also
in this, that he has allowed the plaintiff awards for a period
beginning six weeks prior to August 31, 1895, the day upon
which he finds the plaintiff gave notice to the defendant so-
ciety for the appointment of a commissioner. This is in con-
flict with article XII., section 3, of the by-laws, which provides,
inter alia, that "payment of which award shall not begin more
than two days prior to the time he reports himself to the cham-
ber or the relief committee."

There being no other notice of his disability shown to have
been given to either the relief committee of the defendant so-

ciety or the society, it follows that the notice of August 31 must be treated as the notice provided for in section 3, article XII., of the by-laws as aforesaid.

*H. P. Keiser*, with him *J. H. Jacobs* and *J. Fred Hartgen*, for appellee.

PER CURIAM, July 29, 1898:

The plaintiff, in 1890, joined Fraternity Chamber, No. 4, Knights of Friendship of Reading, Pennsylvania, an unincorporated association, and has ever since paid his dues therein and remained a member thereof in good standing.

By the constitution and by-laws of the Chamber, every member, not indebted thereto in a sum equal to thirteen weeks' dues and being otherwise qualified, when sick or disabled was entitled to an award, or sick benefit, of $4.00 per week, if such indisposition rendered him unable to follow his usual occupation, or any other avocation, for a livelihood; the right to the award to begin, not more than two days prior to the time, when he made report of his disability to the Chamber, or its relief committee.

In April, 1893, the plaintiff became sick and incapacitated for work, and thenceforward until March 26, 1894, was paid, without question, benefits for several intervals of disability. The last period extended from August 19, 1893, to March 26, 1894. The uncontradicted evidence is, that he was and is suffering from valvular disease of the heart and wasting away of the muscles, which reduced his weight from one hundred and thirty-seven or one hundred and forty pounds to one hundred and twenty, and that the disease is chronic in its character. On the ground that his disability was feigned, the Chamber refused to pay him anything, after March 26, 1894. Section 8 of article 19 of the Chamber provides as follows: " Should any companion feel aggrieved at this Chamber for failing to pay him awards, notice shall be given the Chamber thereof within six weeks after such failure, whereupon the Sir Knight Marshal shall appoint a suitable member as a Commissioner to take the testimony in relation to the case of grievance. The Commissioner shall give each party two weeks' notice, of the time and place of meeting to take testimony. The Sir

Knight Marshal shall represent the Chamber, before the Commissioner, and may also be represented by counsel. The aggrieved party may appear in person, and may also be represented by counsel; but counsel representing either party must be a member of the Order in good standing. The Commissioner shall take down fully the testimony of all witnesses offered, giving ample time and full opportunity to all parties to present the same. The testimony shall be taken in ink and be signed by the witness giving the same. After taking all the testimony all the parties may offer, the Commissioner shall report the same to the Chamber, upon which, notice shall be given the aggrieved party that, at the next stated session, the question upon his claim for awards will be considered, at which time the Chamber shall proceed to consider it. When the question is under consideration, all the testimony taken in relation to the case shall be read. Should the aggrieved party appeal from the final action of the Chamber to the Grand Chamber, the testimony taken by the Commissioner will be proper and legal testimony, to be presented to the Committee on Appeals, and be considered by them, in determining the appeal."

On August 24, 1895, the plaintiff inquired as he alleges he had done several times before, why benefits were not being paid him, and asserted his inability to work. On August 31, 1895, he demanded the appointment of a commissioner and an investigation. His demand was refused, and he was told his only remedy was to appeal to the Grand Chamber, if he felt aggrieved because of the refusal to pay. As no appeal to the Grand Chamber was contemplated by the constitution, until a commissioner had taken and submitted the evidence to the lower Chamber, and that body had passed finally on the question at issue, the plaintiff was in a very unfortunate situation. The only path open to him was the one that led him to a tribunal where his case might be considered according to the law of the land. It is useless to dwell on the decisions, which require a member of a beneficial order to first exhaust his remedies, in the courts provided by the rules of the order. They are not applicable here. The plaintiff was denied a hearing, in and by the Chamber, contrary to the fundamental law of the organization. He did all, perhaps a little more, than could be demanded of him by any reasonable construction of the consti-

tution and by-laws. He is therefore rectus in curia. The first assignment of error is not sustained.

The learned trial judge has found that "the only notice capable of being regarded as a compliance with the rules of this association, that the evidence shows to have been given by this plaintiff to the association, was that of August 31, 1895." As this finding, whereof the appellants certainly have no reason to complain, has not been objected to by either side, we must accept it as correct, and determine the plaintiff's rights accordingly. The court below, of course, refers to notice of dissatisfaction at the refusal of the Chamber to pay him his benefits. What benefits for which, under this and other finding of the court, was the plaintiff legally entitled to on August 31st? Manifestly only such as could have been claimed under the notice of disability, given on August 24th, one week before. The alleged notices of dissatisfaction given prior to August 31st were found by the court to be insufficient. The plaintiff, therefore, in order to sustain his suit, was obliged to rely altogether on the notice of disability of August 24th, and the notice of dissatisfaction of August 31st. Noncompliance with the rules of the Chamber had made everything done, or attempted to be done, prior to the former date, ineffectual. Not only was the plaintiff required to give notice of his disability as a foundation of his rights, but as well to follow it up inside of six weeks with a complaint, if payment were withheld. Failing in this, the court below held that there would be a waiver of the right to recover, and as already said, no objection having been taken to this view, we should respect it. The last notice of disability prior to August 24, 1895, was, according to the plaintiff's own testimony, given on April 14, 1894, and the first notice of dissent, which would require the appointment of a commissioner, was communicated on August 31, 1895. It is evident, therefore, that benefits should have been allowed only from a period two days prior to the notice of disability, given August 24, 1895, as provided by article 12 of the by-laws. To compute from an earlier date, would be to give an effect to things occurring before August 24, 1895, on none of which, as the court held, the plaintiff could base any claim. The second assignment of error must be sustained in part; that is, so far as indicated by what has just been said.

The third assignment sets forth the whole decree for error, without indicating what particular matter therein is objectionable. The decree is complex, and directs, first, that the defendants pay the plaintiff $4.00 per week for a period of fifty-two weeks beginning July 20, 1895, a matter we have already considered under the second assignment; second, that they pay him $2.00 per week, for a period beginning July 16, 1896; and, lastly, that the costs be paid by the plaintiff and defendants in equal proportions. Here are a number of distinct and several matters, all included in one assignment of error, contrary to our Rule No. 15, which provides that, except where the judgment is entered on a case stated, "each error relied on must be assigned particularly and by itself. If any assignment embrace more than one point, or refer to more than one bill of exception, or raise more than one distinct question, it shall be considered a waiver of all the errors so alleged." See Galloway's Estate, 5 Pa. Superior Ct. 272; Taylor v. Sattler, 6 Pa. Superior Ct. 229. In furtherance of the practice, thus established by our rule, which is nearly a transcript of a rule of the Supreme Court on the same subject, it may be observed that under the heading of "Appeals" in the amendments of January 15, 1894, made by the Supreme Court to the equity rules, it is provided that "whenever an appeal shall be taken from an order or decree in equity, the appellant shall file in the court below, with his notice of appeal, a brief statement of the errors he alleges to have been made by the order or decree appealed from, or the findings on which it rests. No other errors shall be assigned in the Supreme Court, unless leave be granted on motion and notice to the other party." This requires that the particular matter complained of in the decree shall be set forth, especially where the decree is complex in character. Looking at the third assignment, it is left purely conjectural, whether the defendants mean to complain of the action of the court in imposing half of the costs on them, or in computing benefits from too early a date, or for too long a time, or that too much per week was allowed for either of the different periods mentioned in the decree.

In their printed argument, the defendants' counsel assume, that, as to all the benefits accruing, after the commencement

of the suit, the decree cannot be otherwise than wrong. This does not follow. The prayers of the plaintiff's bill ask for a discovery, an accounting and a decree for the payment of all moneys and benefits thereupon found to be due him. He had a right to such relief. As is said in 2 Lindley on Part. (5th Eng. ed.) *495, " in the case of a mutual insurance society, where the funds of the society are answerable for the payment of the moneys due upon their policies, an assured member is entitled to an account of what is due him on his policy, and to a decree for the payment of what is so due, without involving himself in any general account of the dealings and transactions of the society, or seeking for a dissolution." The master "must continue the account to the day on which he makes it, unless there has been a previous dissolution." Parsons on Part. (3d ed.) 567. An accounting, in equity, does not end with the date of bringing suit, when only partial relief would be furnished by stopping at that time: Eaton's Appeal, 66 Pa. 483; Von Tagen v. Roberts, 2 Pearson, 137–141. Even in the common-law action of account render, after a judgment quod computet, "all articles .of account, though incurred since the writ, shall be included, and the whole brought down to the time when the auditors make award of the account:" Gratz v. Phillips, 5 Bin. 564–569; 2 Burr. 1086; 1 Bac. Abr. (Bouvier's ed. 1846) 52. There being no denial on the part of the association of the possession of funds, or of the fact, that the plaintiff had regularly paid his dues, etc., no accounting happened to be necessary. Had one been ordered, it would have been carried to a date as near the end of the litigation as possible under the evidence instead of terminating at the date of the commencement of the suit. The omission of what, in the present case, would have been a useless preliminary, — not needed to ascertain the plaintiff's right, should not operate to curtail his relief.

At all events, the claim for benefits accruing during the pendency of the suit, if not brought fully before the court, by the prayers of the bill, could have been presented by an amendment under Equity Rule 10, sec. 54, which does away with supplemental bills. The evidence sufficiently shows, and the court below finds as a fact, the plaintiff's continuing disability. The notices of August 24, and August 31, 1895, entitled

him to benefits until the disability ceased. In view of the stand taken by the Chamber, when the complaint of August 31st was made, he was not required to give a new notice of dissatisfaction every six weeks. The construction put by the Chamber on its own fundamental law regulating this matter would make further complaints and demands ineffectual. Nor does the fact, that the plaintiff may have demanded too much, justify the refusal to pay him anything at all. The very refined and technical reasoning employed by the learned counsel for the appellants to establish the contrary of the last proposition, needs no elaborate refutation.

Had the attention of the court below been called to the alleged error in allowing benefits covering the time the suit was going on, doubtless an amendment would have been allowed, if it were needed, and it is not too late to permit it to be made here. Evidently the court and counsel on both sides tacitly assumed, that the plaintiff was entitled to benefits until the suit was ended, if he had the right to recover at all. No objection was made to the testimony showing the continuance of the incapacity, nor is any complaint made that the learned judge's finding of fact relating thereto is incorrect or irrelevant. Considering the breadth of the issue tendered by the plaintiff's evidence, seemingly with the defendants' full acquiescence, it would be unfair to the plaintiff and the court below, to narrow that issue now, because of an objection appearing nowhere, save in the argument of the defendants' counsel.

Under the circumstances of this case, injustice, rather than justice, would be promoted if, by relaxing our rule, the defendants would be aided. The third assignment of error is, therefore, not considered.

The decree is modified in accordance with the views above expressed, and the total amount to be paid by the defendants to the plaintiff fixed at two hundred and fifty-seven dollars and fifteen cents ($257.15) otherwise the same is affirmed; one half the costs of this appeal to be paid by the appellants, and the other half by the appellee.

NOTE—The foregoing opinion was prepared by our lamented Brother WICKHAM, and is now adopted as the opinion of the court.