## Riegel, Appellant, *v.* American Life Ins. Co.

[Marked to be reported.]

*Equity pleading—Responsive answer—Evidence.*

An answer which alleges as facts, what the defendant could not personally know, is not responsive, in the sense of being evidence in defendant's own favor.

Where the receiver of a corporation defendant swears in the jurat to the answer that the allegations thereof are true, "so far as they are therein stated as of his own knowledge," but the answer contains not a single allegation that purports to be "as of his own knowledge," the answer is not responsive to the bill. It is merely pleading, and as such merely puts in issue the facts in dispute.

*Equity—Contract made under mutual mistake as to facts—Surrender of insurance policy for paid-up policy.*

A contract is void if it relates to a subject-matter contemplated by the parties as existing at the time the contract was made, but which in fact did not exist.

A creditor, who held a policy of insurance for $6,000 on the life of her debtor whose whereabouts was unknown, finding it difficult to pay the premiums, made an arrangement with the insurance company, under which the policy was surrendered, and a paid-up policy for $2,500 was issued by the company and accepted by her in lieu of the policy sur-

rendered. At the time of this transaction both parties acted on the supposition that the assured was alive, but in point of fact he had been dead for ten days. *Held*, that the contract was not in the nature of a compromise of a doubtful claim, but an agreement made under the influence of a mutual mistake of facts, and that plaintiff was entitled to have the original policy reinstated as of the date of its surrender: Riegel v. Ins. Co., 140 Pa. 201.

PAXSON, C. J., and MITCHELL, J., dissent.

Argued Jan. 25, 1893. Appeal, No. 71, Jan. T., 1893, by plaintiff, E. Theresa Riegel, administratrix of the estate of Jacob Riegel, deceased, from decree of C. P. No. 4, Philadelphia Co., Sept. T., 1889, No. 350, dismissing plaintiff's bill. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, MCCOLLUM, MITCHELL and DEAN, JJ.

Bill in equity to compel the reinstatement of policy of life insurance.

The case was before the Supreme Court on demurrer to bill, and the decision overruling the demurrer, and directing defendant to plead or answer, is reported in 140 Pa. 193. The defendant answered, denying expressly the averments of the amendment in the bill, quoted in the opinion of the Supreme Court. The case was referred to Thomas D. Finletter, Esq., as master, who reported the facts to be as follows:

" Jacob Riegel, being a creditor of one Henry G. Leisenring in a sum exceeding $6,000, took out a policy of insurance on his debtor's life, in the defendant company, for the sum of $6,000. The annual premium was $153.90. Jacob Riegel died on Jan. 4, 1880, and after his death the premiums continued to be paid by his administratrix, the present plaintiff, until April, 1889. Leisenring, the debtor, on whose life the policy was taken out, left Philadelphia in 1876, after which his whereabouts were unknown to the plaintiff, but the defendant appears to have learned that he was living in Texas not long before the exchange of policies.

" The payment of the annual premiums became burdensome to the plaintiff. The policy being the last asset of the estate left undistributed, it was troublesome to apportion the annual premiums among the numerous representatives of the estate. The plaintiff therefore dispatched her agent, Thomas J. Roche, to the office of the company, to surrender the six thousand dol-

lar policy, and take out a paid-up policy. She gave him no authority to deal with the company on the basis that Leisenring was dead, or might be dead. Roche visited the office of the defendant, and inquired of a clerk what sized paid-up policy would be given for the six thousand dollar policy, which he showed the clerk. The latter figured on it and answered, $2,500. Roche said he would report to Mrs. Riegel, and left, taking the six thousand dollar policy away with him. There was no further conversation than the above, and no discussion whatever as to Leisenring being alive or dead. A few days later on Roche called again at the company's office and announced that Mrs. Riegel would take the twenty-five hundred dollar paid-up policy, and thereupon the exchange of policies was made. At the time of this exchange, Mrs. Riegel supposed Leisenring to be alive. She says, ' We never made any efforts to find him; we supposed him living.' This is evidently so, for she continued to pay the premiums yearly up to the time of the exchange of the policies; and it is not alleged, and no proof is offered by the defendant, that she ever demanded the payment of the six thousand dollar policy, which she would certainly have done had she believed Leisenring to be dead.

" In answer to a question by counsel for the defendant she says: ' Yes, I had reason to think him living, and the reason was, that the company continued to accept premiums on the policy. I do not think they would accept them if he was dead.' She seems to have had the idea many persons, even more experienced in business than Mrs. Riegel have, that the insurance company keeps track of all persons whose lives are insured. Her agent, Roche, had the same idea, for just after the formal exchange of policies, and at the same interview, he asked the clerk or officer of the company ' if he knew of Leisenring's present whereabouts; ' the clerk replied, ' No, but the last we heard of him he was in Texas.' Both interviews of Roche were with one of the clerks or subordinate officers, and at neither was there any doubt expressed about Leisenring being alive, nor was any question of making a settlement of any claim which Mrs. Riegel had or might have against the insurance company, by reason of his being then dead. It was the usual transaction of exchanging an ordinary policy for a paid-up policy of proper value. The fact was established by the de-

fendant company's consulting actuary, that a paid-up policy for twenty-five hundred dollars would have been substantially the amount of paid-up insurance to which Mrs. Riegel would have been entitled, or which ordinarily would have been issued, if the insured had been known to have been alive at the time of the exchange.

" The evidence further shows that Henry G. Leisenring was dead at the date of the exchange of policies. Neither of the parties knew of his death at the time of the exchange of policies."

The master recommended a decree compelling defendant to reinstate the policy of insurance for $6,000. Exceptions to the master's report were filed by defendant and sustained by the court in the following opinion by THAYER, P. J.:

" When this case was before us on a former hearing, the question which was presented for our decision arose upon a demurrer to the plaintiff's bill. The bill set forth that ' Leisenring, on whose life the policy was taken out, left Philadelphia in 1876, after which his whereabouts became unknown. The payment of the annual premiums having become burdensome to the plaintiff, and the fact being unknown whether Leisenring was living or dead, the plaintiff, on March 20, 1889, made an agreement with the defendants, whereby the original policy was surrendered by her, and the company, in consideration thereof, issued to her in lieu thereof a paid-up policy for $2,500. Some time after this it was ascertained by the plaintiff that Leisenring had died on or about March 10, 1889, before the new agreement had been made or the new policy issued, and the plaintiff therefore prayed to have the old policy reinstated.'

" There was no allegation whatever in the bill filed of any mutual mistake of fact by the two parties to the contract in substituting a new paid-up policy for the outstanding one, ' the payment of the premiums on which had become burdensome,' but the plaintiff contended on the argument that, inasmuch as it had turned out that Leisenring had, in point of fact, died ten days before the new agreement was made, that that fact itself constituted such a mutual mistake of both parties as entitled the plaintiff to have the original policy reinstated. We were unable to acquiesce in that view of the law, and gave judgment for the defendants on the demurrer. Our reasons for

doing so are fully stated in 140 Pa. 195. Afterwards, when the case came into the Supreme Court upon appeal from our decree, the plaintiff's counsel, seeing, apparently, the defective character of their case, adroitly filed at the bar of that court, before proceeding with the argument, an amendment of their bill, in which amendment they made the averment that 'the parties acted in respect to the transaction on the basis that the said Leisenring was still alive' (140 Pa. 201). In the opinion of the Supreme Court much stress is laid upon the fact that the defendants had not filed any answer to the averment contained in the amendment filed at bar, and that, therefore, the argument being upon the demurrer, the fact averred in the amendment must be taken as admitted, and for this reversed the decree below, the court saying at the same time : ' This case goes back to enable the defendants to take defence upon the merits.' If the defendants, when the amendment was filed at the bar of the Supreme Court, instead of proceeding with the argument, had withdrawn their demurrer and put in an answer denying the fact averred in the amendment to the bill then made, the case must necessarily have been sent back without argument to this court in order to determine the issue of fact thus raised. But the argument before the Supreme Court went on without any answer being put in to the amended bill, and thus it happened that the demurrer argued in the Supreme Court was a different demurrer from the one argued here, and that judgment was rendered in the Supreme Court upon pleadings which had never been seen by this court.

" Since the case was returned to us the defendants have put in such an answer, in which they categorically deny the allegation contained in the amended bill, that the parties to the transaction had acted in respect thereto on the basis that said Leisenring was alive at the time of the substitution of the new contract for the old one, and declare, on the contrary, that the exchange of policies was made for the reason that it was impossible to obtain any information of Leisenring, whether he was living or dead, that the exchange of policies was a full and final settlement and adjustment of the whole matter, made at the plaintiff's own special instance and request, in order to rid herself of the burden of further payment of premiums, and that she had voluntarily proposed and agreed to renounce all

claims under the policy for the purpose of obtaining a paid-up policy, that she gave the company a receipt to that effect, and acknowledged that she surrendered and released the old policy for the purpose of having the same canceled.

" This answer having been put in, the case went to an examiner and master, before whom witnesses were produced and examined. After the most careful examination of the evidence thus taken, we are of the opinion that the plaintiff has altogether failed to make good her declaration that the agreement, whereby the first policy was surrendered and the new one issued, was made under any mutual mistake of facts by the parties. The plaintiff herself being examined, admitted that, having no knowledge whatever as to the fact whether Leisenring was alive or dead, she could not have acted under any mistake of fact in regard to it when she asked to have the old policy exchanged for a new paid-up one. All the evidence shows that both parties were equally ignorant and equally in doubt upon the subject of Leisenring being alive or dead; that both acted in view of that doubt, and came to an agreement which was at the time entirely satisfactory to both. The defendants possessed no information which the plaintiff did not possess. They held out no inducement to the plaintiff to abrogate the old contract and enter into a new one. The proposition originated with her, and was agreed to only at her request. And she voluntarily released the company from the first contract for the purpose of obtaining one which, at that time, she conceived to be more advantageous to herself. [The case, therefore, falls, as we said in our former opinion, directly within the decision in Perkins v. Gay, 3 S. & R. 331, that where the parties treat upon the basis that the fact which is the subject of agreement is doubtful, the contract is to be held valid,] [2] there being no concealment or unfair dealing. So far as we can see, there was no evidence whatever before the master to show that the new contract was founded upon any mutual mistake of the parties whatever. At the time of the substitution of the new contract for the old one not one word was said, on either side, in regard to Leisenring being alive or dead, or the probability of either event. Both parties considered the new contract advantageous. She rid herself of the burden of future premiums. The defendants diminished the

amount of the insurance by surrendering the future premiums. Both were willing ·to take their chances with the doubts surrounding the facts.    [The new contract was not a contract induced by a mutual mistake about the facts, but a contract made in view of doubtful facts, and because of the doubtful facts.] [3]

" Nothing can be plainer than that this case does not fall within the category of cases entitled to relief in equity upon the ground of mutual mistake.    The master has proceeded in his report upon the theory that the burden was upon the defendants to sustain the answer.    On the contrary, the burden was upon the plaintiff to overthrow the answer, and that she has wholly and signally failed to do.    The fact found by the master that the parties dealt, at the time of the new agreement entered into, on the basis that Leisenring was then alive, is not supported by any adequate evidence.    It is denied by the answer, and the answer has not been overthrown by any adequate proof whatever, for it does not matter at all that the plaintiff now says that she supposed at the time of the new contract that Leisenring was alive.    That does not prove any mutual mistake of the parties.    She admits that she had no knowledge whatever upon the subject, and that therefore she could not have acted under any.    The fact is, as is shown by all the evidence, that both parties acted in perfect good faith ; that both were equally ignorant of the facts, and that the contract for a new paid-up policy and the surrender of the old one was deliberately and fairly entered into by both parties, and in full view of all contingencies which might subsequently appear. Under such circumstances a contract deliberately and fairly entered into ought not to be ripped to pieces and blown away under the pretence of an equity which does not exist.    We are of opinion that the master erred in his findings of the facts, and that his conclusions are therefore erroneous.

" Ordered [that the exceptions to the master's report be sustained ; that the report be set aside, and that the plaintiff's bill be dismissed, the plaintiff to pay the costs."] [4]

*Errors assigned* were, that the court below erred (1) in holding that the defendants have put in such an answer in which they categorically deny the statements averred in the amended bill ; (2–4) in holding as in the portions of the opinion in

brackets, quoting them; (5) in dismissing the bill; (6) in not confirming the master's report and dismissing the exceptions.

*William W. Porter, Frederick J. Geiger* with him, for appellant.—In the absence of the particular person representing the insurance company, who dealt with Mrs. Riegel at the time of the surrender of one policy and the issuance of the other, it is impossible for any one to say what the belief on the subject of the life or death of Leisenring was at the particular moment, but the act done is itself conclusive evidence of the basis upon which it was done. The amount of the paid-up insurance issued is exactly the amount that would have been issued if Leisenring was alive. The conclusion is imperative that the company acted on the basis that he was alive; otherwise, if there was doubt in the minds of the parties, or in the mind of the insurance company, the amount of the paid-up insurance issued would have been in excess of the usual amount, so as to produce a consideration for the settlement of the doubtful right. If Mrs. Riegel got just what she was entitled to if Leisenring was alive she got no consideration whatever for the doubt whether he was dead.

The answer filed to the bill was not filed by the original defendant, which was a corporation. It was filed by another corporation which was the receiver of the insurance company, and was sworn to by the president of the receiver company. The person making the oath, therefore, to the answer was one who confessedly had no knowledge of the facts whatever. His denials of the allegation of the bill cannot be placed in the same position as the denials on oath of a respondent who himself makes the affidavit: Socher's Ap., 104 Pa. 609; Eaton's Ap., 66 Pa. 483; Coleman v. Ross, 46 Pa. 185; 3 Greenl. Ev., § 287.

*H. Hazelhurst,* for appellee.—The answer denied the truth of the amendment in clear, positive and express words, and was therefore conclusive in the respondent's favor until it was overcome by the satisfactory testimony of two opposing witnesses, or of one witness corroborated by other circumstances and facts which gave it a greater weight than the answer, or which are equivalent in weight to a second witness: Burke's Ap., 99 Pa. 350; Priestley's Ap., 127 Pa. 432; Eaton's Ap.. 66 Pa. 490.

Nothing can be plainer than that this case does not fall within the category of cases entitled to relief in equity upon the ground of mutual mistake. The master has proceeded in his report upon the theory that the burden was upon the defendants to sustain the answer. On the contrary, the burden was upon the plaintiff to overthrow the answer, and that she has wholly and signally failed to do. The fact found by the master that the parties dealt, at the time of the new agreement entered into, on the basis that Leisenring was then alive, is not supported by any adequate evidence. It is denied by the answer, and the answer has not been overthrown by any adequate proof whatever, for it does not matter at all that the plaintiff now says that she supposed at the time of the new contract that Leisenring was alive.

OPINION BY MR. JUSTICE STERRETT, February 13, 1893:

When this cause was here two years ago on appeal from decree sustaining the general demurrer and dismissing the bill, an amendment, for the purpose of clearly expressing what, at most, was only implied, was moved and allowed at bar by adding to fifth paragraph of the bill these words: " both of the parties acting in respect to the transaction on the basis that the said Leisenring was then alive." That defect in the bill, however, did not appear to be the ground on which the demurrer was sustained in the court below. The plaintiff's equity, grounded on averments of fact contained in the bill and admitted by the pleading, was then fully considered and emphatically sustained in a clear and convincing opinion, by our Brother WILLIAMS, reported in 140 Pa. 201. The decree was accordingly reversed and record remitted with direction that the defendant plead or answer, etc.

After full consideration of the facts and circumstances, the opinion referred to concluded thus : " Upon these facts, if the attention of the learned judge had not been diverted from them, we feel sure he would have reached the same conclusion that we have reached, that it would be grossly inequitable to hold the plaintiff to a bargain made under the influence of a mistake of fact like that before us. This mistake the demurrer admits. If there had been any circumstance which the defendant could have set up to show that a correction of this mistake, at this

time, would be inequitable, it should have been shown to the court by answer. If such circumstances do exist, they may yet be presented, as the case goes back to enable the defendant to take defence upon the merits."

The defendant company, having been declared insolvent, was duly dissolved on application of the attorney general more than a year before the answer was filed by Mr. Ritchie, the then president of the Real Estate Title Insurance Company which, in the interim, appears to have been appointed receiver of the defunct company. No plea or answer was ever filed by any officer of said company, nor by any one, on its behalf, who had any knowledge—otherwise than by information obtained from others—of the facts averred in the bill. Mr. Ritchie and his company were entire strangers to the transaction and neither of them appears to have had any knowledge of the facts upon which plaintiff's equity is grounded; and, of course, it was impossible for him, as president of the receiver company, to answer otherwise than upon information and belief. In the jurat to his answer, he swears the allegations thereof are true, " so far as they are therein stated as of his own knowledge," etc.; but the answer contains not a single allegation that purports to be " as of his own knowledge."

The special evidential efficacy of a responsive answer in equity is due to the fact that the plaintiff, by calling on the defendant to answer the allegations of the bill, appeals to his conscience, accredits him, and, pro hac, makes him his own witness. The plaintiff in this case never called upon Mr. Ritchie, or any other stranger to the transactions alleged in the bill to make answer thereto. The officers of the insurance company, who were cognizant of those transactions, were the proper persons to deny, if they could of their own knowledge, the averments of the bill, and thus make the answer responsive. The answer of Mr. Ritchie, in this case, is in no sense a responsive answer. It is merely pleading; and as such, put in issue the facts in dispute without more : Eaton's Appeal, 66 Pa. 490 ; Burke's Appeal, 99 Pa. 361 ; Socher's Appeal, 104 Pa. 609 ; Coleman v. Ross, 46 Pa. 185 ; Story's Eq. Jur. §§ 1528, 1529 ; 3 Greenl. Ev. §§ 287 to 289 ; Daniel's Ch. Pr. 846. In note to the latter, it is said that an answer which alleges as facts, what the defendant could not personally know, though respon-

sive to the bill, simply puts plaintiff upon proof of his own allegations. So, too, in 3 Greenl. Ev. § 287, it is said that if the fact asserted by the defendant is such that it is not and cannot be within his own knowledge but is in truth only an expression of his strong conviction of its existence, or is what he deems an infallible deduction from facts which were known to him, his answer is not responsive, in the sense of being evidence in his own favor; the nature of his testimony cannot be changed by the positiveness of his assertion. The answer of an infant by his guardian ad litem, though it be responsive to the bill, and sworn to by the guardian, is not evidence in his favor.

But, whether the answer be regarded as responsive or not, the proofs were quite sufficient to warrant the learned master in finding, as he did, the truth of every material averment in the bill. His findings of fact are in strict accord with the uncontradicted testimony, and his conclusions of law are so manifestly correct that his report should have been unhesitatingly approved and decree made in accordance therewith. No testimony, either written or oral, was introduced by or on behalf of the defendant. All the material facts, on which plaintiff's equity is grounded, were as clearly and conclusively established as if they had been admitted by answer or by demurrer to the bill; so that practically we have now before us substantially the same questions that were fully considered and determined when the case was here before. In that appeal, the fourth and fifth specifications of error are quotations from opinion of the learned president of the court below, dismissing the bill, wherein, speaking of the new contract, he says:

4. "It was not a contract induced by a mistake about facts, but a contract made in view of doubtful facts and because of the doubtful facts."

5. "It was in the nature of a compromise founded upon the doubts which existed, not upon any mistake of the facts."

In this appeal, the third specification, quoted from opinion of same learned judge again dismissing the bill, is that "the new contract was not a contract induced by mutual mistake about the facts, but a contract made in view of doubtful facts and because of the doubtful facts."

The second specification, in this, is in effect the same as the fifth in the former appeal.

These propositions go to the very heart of the plaintiff's case. They substantially involve the only cardinal questions that are or ever have been in it and about which there is the slightest room for doubt. They are the very questions that were considered and decided by this court when the case was here before. That clearly appears in the opinion, wherein, after reciting the facts averred in the bill, it is said:

" The case presented on these facts was that of a contract entered into under the influence of a mutual mistake, and a claim for relief from such contract. The mistake was in relation to the fact of Leisenring's death. Both parties evidently supposed and acted on the supposition, that he was alive, and that the annual premiums upon his life, which had become burdensome to Mrs. Riegel, must be continued indefinitely until his death should take place. As it had become difficult for her to pay these premiums, the only way in which she could be relieved from them was to surrender her policy and accept a paid-up policy for such smaller sum as the premiums already paid would purchase. Rather than take the risk of losing the entire amount of the policy, by her inability to keep up the annual payments, she surrendered her policy for six thousand dollars and accepted in lieu of it a paid-up policy for two thousand five hundred dollars. This was the contract she made while in ignorance of Leisenring's death. At the time she made it she was already relieved from the burdensome premiums, and the entire amount of the policy was honestly due her from the company. What was the effect of the mistake upon her? Simply to take from her the difference between the two policies and give her absolutely nothing for it. She surrendered a policy for six thousand dollars, on which the liability of the company was already fixed, and received one for two thousand five hundred dollars to secure relief from a burden already removed. The company parted with nothing. She secured nothing. The whole transaction was a mistake, and, if the decree of the court stands, the result will be to take three thousand five hundred dollars from Mrs. Riegel and give it to the insurance company.

" These facts seem to us to present a clear and a strong case for equitable relief, so strong, indeed, that a mere statement of them is the only argument necessary for its support. The duty

of a chancellor to relieve in cases of mutual mistake is so well settled that no citation of authorities can be needed. . . .

"The learned judge, who heard this case in the court below and who is thoroughly familiar with the principle to which we have referred, seems to have been misled in regard to the facts set up in the bill. He treats the arrangement made between Mrs. Riegel and the company on the 20th of March as a compromise of a claim against the company for the alleged death of Leisenring, which Mrs. Riegel was unable to establish, because unable to show the death. As the fact of the death, and the consequent liability of the company on the policy, were uncertain, it was a case for the application of the doctrine that the adjustment of a doubtful claim constituted a valid consideration for the surrender of the policy, and the acceptance of the new one, and upon this theory the decree was entered. But it nowhere appears that Mrs. Riegel made any claim on the company, or supposed that she had any. She was asking relief from future payments of premiums on a policy on which she supposed future payments would have to be made, and to get this relief she was willing to sacrifice more than one half of the sum insured. The company was willing, in consideration of the large reduction of its liability, to give her a policy for what her payments would purchase, and relieve her in future. This is an exchange often made, and adjusted by well settled rules. It was a compromise of nothing. We do not doubt the correctness of the rule applied by the learned judge in cases to which it is fairly applicable, but this is not one of them. The plaintiff distinctly avers that she did not know of the death of Leisenring until some ten days after the exchange of policies was effected, and that 'both parties to the transaction were acting, in respect thereto, on the basis that Leisenring was alive.' She distinctly avers that the object of the arrangement was to secure relief for herself from the indefinite payment of premiums that had become burdensome to her, that the new policy was accepted for that reason, and the old one surrendered, at a time when, had she known the fact, she was entitled to demand the entire sum upon which she had so long and so steadily paid the burdensome premiums."

Little, if anything, can be profitably added to what is so clearly and forcibly said, in the foregoing quotations, in support of our former decree.

The error into which the learned judge of the common pleas appears to have unintentionally fallen in the outset, and to which he seems to cling so pertinaciously, is not so much in regard to the well settled principles of equity, upon which relief is granted in cases of mutual ignorance or mistake of material facts, as in the construction which he put upon the undisputed acts and declarations of the parties to this contention and the circumstances connected therewith.

Sufficient reference to those principles is made in our former opinion; but it may not be amiss to revert to some of them. The general rule is that an act done or a contract made, under a mistake of a material fact, is voidable and relievable in equity. The fact must, of course, be material to the act or contract; for though there may be an accidental mistake or ignorance of the fact, yet, if the act or contract is not materially affected by it, relief will not be granted. Thus, A. buys from B. an estate to which the latter is supposed to have an unquestionable title. It turns out, upon due investigation of the facts—unknown at the time to both parties—that B. has no title (as if there be a nearer heir than B., who was supposed to be dead but is, in fact, living); in such a case equity would relieve the purchaser and rescind the contract. But, suppose A. buys from B. an estate the location of which was well known to each of them, and they mutually believed it contained twenty acres, when in fact it contained only nineteen and three quarter acres, and the difference would not have varied the purchase in the view of either party; in such a case the mistake would not be ground for rescission of the contract: 1 Story's Eq. Jur. §§ 140, 141. It makes no difference in application of the principle, that the subject-matter of the contract be known to both parties to be liable to a contingency which may destroy it immediately; for if the contingency has—unknown to the parties—already happened, the contract will be avoided as founded on a mutual mistake of a matter constituting the basis of the contract: 1 Story's Eq. Jur. §§ 143 *a* and 143 *b*. The principle is illustrated by familiar examples, employed by text writers, thus: A. agrees to buy a certain horse from B. It turns out that the horse is dead at the time of the bargain, though neither party was then aware of the fact. The agreement is void.

A. agrees to buy a house belonging to B. The house was

previously destroyed by fire, but the parties dealt in ignorance of that fact. The contract, not being for sale of the land on which the house stood, was not enforceable. So, too, A., being entitled to an estate for the life of B., agreed to sell it to C. B. was dead, but both parties were ignorant of the fact. The agreement was avoided.

For similar reason a life insurance cannot be revived by payment of a premium, within the time allowed, for that purpose, by the original contract, but after the life had dropped, unknown to both insurer and assured, although it was in existence when the premium became due; and although the insurer has waived proof of the party's health, which by the terms of the renewal it might have required; the waiver applies to the proof of health, not to the fact of his being alive : Pritchard v. Merchants Life Assurance Society, 3 C. B., N. S. 622.

Mr. Pollock, in his excellent treatise on the "Principles of Contract," *441, states the general principle thus : " An agreement is void if it relates to a subject-matter (whether a material subject of ownership or a particular title or right) contemplated by the parties as existing, but which in fact did not exist." This is followed by an interesting discussion of the subject, with numerous illustrations of the principles involved. See Cochrane v. Willis, 1 Ch. 58; Allen v. Hammond, 11 Peters, 71; Hitchcock v. Giddings, 4 Price, 135; Hore v. Becher, 12 Simons, 465; Couturier v. Hastie, 5 H. L. C. 673. In many of the cases, prominence is given to failure of consideration resulting from mutual mistake or ignorance of material facts, but entire failure of consideration is not an essential ingredient in any case.

It cannot be doubted that in exchanging the old for the new policy both parties acted on the basis that Leisenring was then alive. Their every act in the transaction was predicated of that as an assumed fact. The new policy like the old one was a risk on a life assumed to be then in being. The difference between them was that the one carried with it an obligation on the part of the holder to pay annual premiums during the life of Leisenring; the other exempted her from that obligation. She purchased that exemption by surrendering seven twelfths of the original insurance, or $3,500. If the exchange was not made on the assumption by both parties that Leisenring was

then alive, the company stultified itself by issuing a paid-up policy on the life of one who was then in his grave; and the plaintiff was guilty of the supreme folly of paying $3,500 for exemption from liability which, by the previous death of Leisenring, had ipso facto ceased. In other words, at the time the exchange of policies was made, the plaintiff had a perfectly valid claim upon the defendant for the full amount of the insurance, $6,000, and surrendered $3,500 of that to secure exemption from a liability that had ceased to exist; but she and the company were both at that time ignorant of the fact that the life, on which the original risk was taken, had previously dropped. The supposed element of doubt as to whether Leisenring was then dead or not never entered into the contemplation of either party; nor did it form any part of the consideration for exchange of policies. The positive and uncontradicted proof by the actuary of the company was that the amount of the paid-up policy was ascertained and fixed, according to the established rules of the company, at the very sum that would have been required if Leisenring had been personally present in the office when the terms of exchange were settled. The central fact, underlying the transaction and to which every circumstance connected therewith clearly points, was the assumption by both parties that Leisenring was then in full life. When last, theretofore, heard from he was alive, and the presumption was that he continued to live. In the absence of any knowledge to the contrary, it was quite natural and reasonable that the parties, in making the exchange, should act upon that presumption and assume, as they evidently did, that he was still alive. Of course, they could not know positively that he was then alive, any more than any one can certainly know that a friend from whom he is far separated by distance is now living. In view of the undisputed facts as to the acts of both parties, and everything connected with the transaction, it would be wholly unreasonable and unwarranted to hold that the parties treated upon the basis that the fact which was the subject of their agreement was doubtful, or that the contract was made " in view of doubtful facts and because of the doubtful facts." In the light of the proofs, upon which the findings of the master are based, and of all the circumstances, the acts of the parties are not susceptible of any such construction as has

been put upon them by the learned judge of the common pleas. In short, the facts, established by the uncontradicted proofs and found by the master, are essentially the same as those admitted by the demurrer and upon which our former decree was based. Certainly they are not less favorable to the plaintiff now than then. It therefore appears to us that a proper consideration of the orderly administration of justice should have resulted in a decree in accordance with the views expressed in our former opinion.

This proceeding is not grounded upon a previous rescission of the agreement under which the exchange of policies was made, but is for the purpose of enforcing a rescission by decree of this court, etc.

It is therefore adjudged that the decree of the court of common pleas be reversed and set aside and exceptions to master's report dismissed; and it is now adjudged and decreed that the contract, under which said exchange of insurance policies was made, be rescinded, that the paid-up policy for twenty-five hundred dollars be surrendered and canceled, and that the original policy of insurance be reinstated, as of date of its surrender; and it is further adjudged and decreed that the defendant company pay to the plaintiff the sum of six thousand dollars ($6,000), with interest from October 4, 1889, and also all the costs of this proceeding.

MR. CHIEF JUSTICE PAXSON: I dissent, and would affirm the decree upon the clear and able opinion of the learned judge below.

MR. JUSTICE MITCHELL: I concur with the Chief Justice in his dissent.