# Cornwell *v.* J. W. Sparks, Appellant.

*Corporations—Stock certificates—Forgery of owner's name— Equity pleading—Answer—Responsiveness.*

1. In a suit in equity for an accounting for stock certificates pledged with defendants by plaintiff's deceased husband and sold by defendants, where it was proved by two credible witnesses other than plaintiff that plaintiff's name written upon the powers of attorney was not in plaintiff's handwriting but was forged, a finding that the title to the stock did not pass to the pledgees was proper.

2. An answer in equity which does not deny the averments of the bill and which indicated that deponent has no personal knowledge of the facts which he therein alleges is not responsive.

3. An answer to a bill alleging the forgery of stock certificates and averring that plaintiff had authorized someone to sign her name to such certificates, but showing that the deponent had no personal knowledge of such authorization, does not cast upon the plaintiff the burden of overcoming these averments.

Argued Jan. 11, 1915. Appeal, No. 229, Jan. T., 1914, by John W. Sparks and J. Maurice Wynn, Trading as J. W. Sparks & Company, from decree of C. P. No. 4, Philadelphia Co., March T., 1913, No. 2395, for plaintiff on bill in equity for an accounting in case of Ella E. Cornwell v. The Philadelphia Company; John W. Sparks and J. Maurice Wynn, Trading as J. W. Sparks & Company, Alexander H. DeHaven, William B. DeHaven, Samuel Shanbacher, B. Frank Townsend, Jr., Jeremiah F. J. Murphy and William D. Grange, Trading as DeHaven & Townsend; and Andrew J. Reilly and Walter S. Humphreys, Trading as Frank F. Bell & Company. Before BROWN, C. J., MESTREZAT, ELKIN, STEWART and FRAZER, JJ. Affirmed.

Bill in equity for discovery and for an accounting. Before WILLSON, P. J.

From the record it appears that on or prior to April 8, 1908, two certificates for 40 and 25 shares respectively of the stock of The Philadelphia Company were in the name of plaintiff and so registered. On and prior to said date, Gibbons Gray Cornwell, plaintiff's husband, had been buying and selling stocks through J. W. Sparks & Co., and was indebted to them on this account, for which indebtedness they held collateral securities. On that date, in compliance with a demand for additional collateral, he gave them the said two certificates of stock, with the powers of attorney signed with plaintiff's name and witnessed by him. The signatures were guaranteed in writing by Jamison Brothers & Co., members of the Philadelphia Stock Exchange, then in good standing. The certificates were sent by J. W. Sparks & Co. to Guarantee Trust & Safe Deposit Co. of Phila-

delphia, the transfer agent of The Philadelphia Company, and a new certificate for 65 shares was issued to J. W. Sparks & Co., who later sold 34 shares of Philadelphia Company stock to the other defendants, who purchased in good faith and for value, and the 65-share certificate was surrendered and three new certificates issued, one of them, for 31 shares, to J. W. Sparks & Co., but 65 shares were continued as collateral to Gibbons Gray Cornwell's account, other shares of the same stock being substituted for those sold.

Col. Cornwell died August 6, 1912.

On May 27, 1913, after notice to plaintiff, J. W. Sparks & Co. sold the 65 shares, receiving $43 a share for 55 shares and $43.50 for 10 shares, and also sold all other stocks held as collateral for the indebtedness of Col. Cornwell, and the total amount realized was not sufficient to pay said indebtedness. The market price of The Philadelphia Company shares on April 8, 1908, the lowest and highest prices thereafter, and the dividends since that date, were agreed upon.

At the hearing, the plaintiff testified, under objection to her competency, that the signatures to the powers of attorney were not hers and were not authorized by her. Other witnesses testified that the signatures were not in plaintiff's handwriting, but no one except the plaintiff testified in denial of the authority of her husband to sign her name.

In the adjudication, the trial judge held that the plaintiff was incompetent to testify to matters occurring in her husband's lifetime, and disregarded her testimony. Nevertheless, he sustained the bill as to The Philadelphia Company and J. W. Sparks & Co., holding that the testimony (excluding that of the plaintiff herself) established that the signatures were forgeries. He found as a fact that The Philadelphia Company, in making the transfer on the powers of attorney, acted solely in reliance upon the written guaranties of Jamison Brothers & Co., but declined to make any finding

as to the equities as between The Philadelphia Company and J. W. Sparks & Co.

Exceptions to the adjudication were dismissed, and a final decree was entered that The Philadelphia Company and J. W. Sparks & Co. were severally liable to plaintiff in the sum of $2,800, with interest from May 27, 1913; and in the further sum of $56.87, with interest from November 1, 1912, and in the further sum of $56.87, with interest from February 1, 1913, "to be forthwith paid by said defendants to plaintiff."

John W. Sparks and J. Maurice Wynn, trading as J. W. Sparks & Company, appealed.

*Errors assigned* were in dismissing exceptions to various findings of fact and conclusions of law of the trial judge in the decree of the court.

*Samuel D. Matlack,* with him *Henry G. Hart,* for appellants.—The burden was on the plaintiff to prove the forgery of her signature whether or not the answer was technically responsive, and testimony merely that the signatures were not in her handwriting was not proof that they were forged: Riegel v. American Life Ins. Co., 153 Pa. 134, 143; Barclay's App., 38 Leg. Int. 440; Audenreid v. Walker, 11 Philadelphia 183; Kneedler v. Woodruff, 1 W. N. C. 42; Ephraim v. Pollock, 1 W. N. C. 102.

The plaintiff being incompetent to testify to matters occurring in her husband's lifetime, the forgery was not shown by even one witness: Burke v. Burke, 240 Pa. 379; Sutherland v. Ross, 140 Pa. 379; Foster v. Allshouse, 222 Pa. 446, Rudolph v. Rudolph, 207 Pa. 339; 17 Pa. Superior Ct. 558; Yeakel v. McAtee, 156 Pa. 600.

The answer of J. W. Sparks & Company was responsive and their denial of forgery had to be overcome by two witnesses, or one witness with corroborating circumstances: Larkins' App., 38 Pa. 457; Smith v. Ewing, 151 Pa. 256; McCoy v. Kane, 19 Pa. Superior Ct. 187;

Burke's App., 99 Pa. 350; Eaton's App., 66 Pa. 483, 491; Fidelity Title & Trust Co. v. Weitzel, 152 Pa. 498, quoted in Stoner v. Pittsburgh, Bessemer & Lake Erie R. R. Co., 229 Pa. 521, at page 524; Saake v. Dorner, 167 Pa. 301.

*Alex. Simpson, Jr.,* with him *Isabel Darlington* and *Thomas S. Butler,* for appellee.

OPINION BY MR. JUSTICE ELKIN, February 8, 1915:

This case was so carefully and exhaustively considered by the learned president judge of the court below sitting as a chancellor, that very little if anything of value can be added by this court in disposing of the questions raised upon the present record. Keeping in mind the material findings of fact, which are not challenged, we must regard the defenses relied on here as purely technical and without substantial merit. No one can read the testimony in this case without concluding that the 65 shares of stock in controversy represented by two certificates belonged to the plaintiff, that her name signed to the power of attorney on the back of each certificate was a forgery, and that within a very few days after discovering her stock had been thus pledged as collateral for another's debt, she caused notice to be served upon appellants by making demand for a return of the shares of stock. At the hearing before the chancellor two credible witnesses, familiar with her handwriting, testified that the signatures purporting to be those of plaintiff were forgeries. In addition to this testimony the chancellor had before him the certificates upon the back of which were written the forged signatures, and thus had the opportunity of inspecting the signatures and of making comparisons with the genuine handwriting of plaintiff before determining whether forged or not. Appellants did not attempt to prove that the signatures were genuine, and no testimony was offered to contradict the witnesses who testified that they were forgeries. Upon the record thus presented the

learned chancellor found as a fact that the signatures, purporting to be those of plaintiff, were forgeries, and that title to the shares of stock did not pass to appellants. No other conclusion could have been reached without disregarding the evidence. Upon the merits this should be and is controlling in determining the legal rights of the parties. It is contended, however, and with considerable force, that the answer set up two defenses, one that the signatures were genuine, and the other that even if forged, plaintiff had authorized the forgery. The evidence shows conclusively that the signatures were forged and appellants by failing to offer any testimony relating to this important fact must be deemed to admit their inability to do so. Notwithstanding their failure to prove the genuineness of the signatures, or even to make an attempt to do so, learned counsel for appellants insist that the averment in the answer to the effect that plaintiff had authorized what has been found to be forgeries, cast upon plaintiff the burden of proving that she did not authorize the signing of her name to the powers of attorney. In the very nature of the case no one except the plaintiff herself could so testify. She was called as a witness and did testify that she never gave anyone authority to sign her name to the powers of attorney, but her competency as a witness to testify to this fact was challenged, and the chancellor disregarded her testimony in so far as it related to matters occurring in the lifetime of her husband. We must therefore pass upon the questions raised by the present record without reference to this testimony, because the case having been decided in favor of the plaintiff upon other grounds, there was no occasion to have the exclusion of that testimony reviewed.

On this branch of the case it remains to be determined whether the averment in the answer that plaintiff had authorized someone to sign her name to the powers of attorney was responsive in the sense of casting the burden of proof upon the plaintiff as required by the equity

rule. We cannot so regard the pleadings. It has been decided many times that an answer which alleges as facts, what the defendant could not personally know, is not responsive, in the sense of being evidence in defendant's own favor: Riegel v. American Life Ins. Co., 153 Pa. 134. An answer in equity gets its responsive force from the personal knowledge of the party who makes it, and in some instances there may be the equivalent of personal knowledge by the averment of facts from which such knowledge may be inferred. Again, in order that an answer within the meaning of the equity rule may be deemed responsive, there must be a positive denial of the averments of the bill. In the case at bar it is not pretended that the party who made answer under oath had any personal knowledge relating to the averment that plaintiff had authorized someone to sign her name to the certificates, nor was there any positive denial of the averment in the bill that the signatures were forgeries. The answer was in the alternative form, either that the signatures were genuine, or if not genuine, that they were written by the husband of plaintiff who was authorized so to do. Even a casual reading of the answer shows that the party who made it had no personal knowledge of the facts averred, and that he was not in position to positively state which horn of the dilemma he might choose to take when the case was called for hearing. Under these circumstances we cannot regard the answer in the present case as anything more than mere pleading upon the exact point involved; and as such, it only put in issue the facts in dispute between the parties. The learned court below has found from the evidence all the material facts upon which the rights of the parties depend in favor of the plaintiff, and in our opinion the evidence was sufficient to sustain the findings. Ample authority for the position just stated will be found in the following cases: Eaton's App., 66 Pa. 483; Socher's App., 104 Pa. 609; McCullough v. Barr, 145 Pa. 459;

Riegel v. American Life Ins. Co., 153 Pa. 134; Gantt v. Cox & Sons Co., 199 Pa. 208.

We cannot agree that there was any question of laches in the present case and the finding of the court below is a complete answer to the position of appellants in this regard.

Nor can we agree that the learned court below erred in entering a money decree under the facts developed at the hearing. When the bill was filed appellants still held the shares of stock, and they had personal notice that these shares of stock were claimed as the property of plaintiff. They took the chances of selling the stock and converting the shares into money. The decree simply requires them to account to the plaintiff for the money actually received by them as proceeds of the sale, together with such dividends and interest as accrued in the meantime. These facts bring the case within the rule of Blood v. Erie Dime Savings and Loan Co., 164 Pa. 95.

The contention that the decree should be reversed because the learned court below did not undertake to determine in this proceeding the liability between appellants and The Philadelphia Company cannot be sustained. There is nothing in the record, or in the pleadings, which required the court below to determine the ultimate liability of these respective parties. No cross-bill was filed and the court took the position that as the record stood no such question was presented for determination. This was clearly the right view to take. If appellants desired affirmative relief, they should have filed a cross-bill: Freeland v. South Penn Oil Company, 189 Pa. 54; McCune v. Lytle, 197 Pa. 404.

Decree affirmed at cost of appellants.