Egan, Admr., Appellant, *v.* Smith et al.

Argued November 27, 1936.  Before KEPHART, C. J., MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Wm. B. Rudenko,* with him *Harry Shapiro,* for appellant.

*William T. Campbell,* of *Swartz, Campbell & Henry,* with him *Herbert A. Barton,* for appellees.

OPINION BY MR. JUSTICE LINN, January 11, 1937:
This was a case-stated for conversion of shares of stock.  Judgment was entered for defendants.  Plaintiff appeals.

John Stotz died possessed of certain shares of stock of the United Gas Improvement Company.  Letters testamentary were granted to Fletcher W. Stites who delivered the stock certificates to defendant stockbrokers with instructions to sell;  he did not disclose that the shareholder was dead and that he was executor.  The transfer powers on the back of the certificates contained the forged signature of Stotz, placed on them after his death.  Ignorant of those facts, defendants opened an account in the name of Stotz.  They sold the stock at the market and delivered their check to Stites, but

drawn to the order of Stotz, for the proceeds. It was endorsed with the forged signature of Stotz and by Stites, who deposited it in his personal account. Stites died; letters with the will annexed were granted to the plaintiff.

On September 18, 1933, five months after defendants delivered their check to Stites, the administrator discovered that the proceeds had not come into the estate. On November 24, 1933, he sued defendants in assumpsit for the market value of the stock at time of sale. In February, 1934, he first learned of the forgery. He then filed a bill (the assumpsit not having been tried) against the United Gas Improvement Company for the cancellation of the transfers and the reissue to him of certificates representing his interest in the company. The United Gas Improvement Company moved under the Sci. Fa. Act of 1929, P. L. 479, 12 PS section 141, as amended, to bring in the present defendants, as additional defendants, on the ground that they were liable over to the United Gas Improvement Company on their guaranty of the authenticity of the signatures to the stock-transfer powers. A decree granting the relief was entered. In the course of his adjudication the learned chancellor said: "As far as the added defendants are concerned, there is no basis upon which relief can be obtained against them in the present proceedings. It would seem that the defendant is obliged to seek redress against them in a suit at law to recover a money judgment." The decree was affirmed: 319 Pa. 17, 178 A. 683. In the affirming opinion it was said: "The loss-occasioning carelessness in this case was not that of Stotz, it was the unquestioning inertness of those who readily accepted forged signatures at their face value. No diligence on Stotz's part could have revealed to him the future faithlessness of the man whom he had chosen to execute his will, while due diligence on the part of those who suffered loss by these forgeries would have led to their timely detection."

Instead of requiring the corporation to issue new certificates of stock to the plaintiff, he assented to the satisfaction of the decree by the present defendants and received from them the market value of the stock at the time of the sale with dividends without prejudice to his rights, if any, to proceed against these defendants for the conversion.

In holding that defendants were not liable on the case-stated, the learned court below said: "We are of the opinion that sale of the stock by the defendants on forgeries of which they were ignorant and innocent did not amount to conversion. The defendants did not deal with the stock as their own, nor did they deny the title of the owner, they acted in good faith upon what appeared to be his grant of authority to sell." We cannot assent to that conclusion; Stites was not acting pursuant to "his grant of authority to sell." As executor, he had authority to execute the transfer powers and to direct a sale but that is not what he did; if he had done that and the brokers had paid the proceeds to him as executor they would have been discharged. They did not take the steps necessary to ascertain that Stites was not Stotz; that Stotz's signatures were not genuine or, passing those omissions, that Stites had any authority to receive the check drawn to Stotz's order. Defendants were guilty of "the loss-occasioning carelessness" as it was described in the opinion in the equity suit; it was not an innocent conversion but one resulting from defendant's negligence for which damages may be recovered: Cf. *Wolfe v. Penna. Co. etc.*, 322 Pa. 344, 185 A. 292.

This action was brought shortly after the decree in equity was made and appellees, in support of their judgment, now contend that in the suit in equity the entire cause of action could have been litigated, and that therefore the decree satisfied all liability resulting from the conversion. This contention must also be rejected. An action for conversion lay against the

United Gas Improvement Company: *Pennsylvania Co. etc. v. Phila. etc. R. R. Co.,* 153 Pa. 160, 25 A. 1043. The plaintiff might have asked for, and on proper showing, might have obtained damages in the equity suit: *Pennsylvania Co. etc. v. Franklin Fire Ins. Co.,* 181 Pa. 40, 37 A. 191; *Cornwell v. Sparks,* 248 Pa. 109, 93 A. 868. He might have joined the defendant brokers and the United Gas Improvement Company in the one bill as was done in *Cornwell v. Sparks* just mentioned.[1] None of these things was done.

The tort of the brokers was a different tort from that committed by the United Gas Improvement Company. By wrongfully taking possession of the property in circumstances resulting in damages *(Cf. Rice v. Yocum,* 155 Pa. 538, 26 A. 698)[2] each breached a separate duty owed to plaintiff. No reason why the plaintiff should not have redress in separate proceedings has been suggested. He did not ask for damages from the United Gas Improvement Company but for the issue of the certificates showing his interest in the corporation of which he had been deprived. The decree to that effect was satisfied, as has been said, by appellees' payment of money "without prejudice to plaintiff's right, if any, to proceed by suit or otherwise against" the appellees. As their conduct was negligent they must respond under the Act of April 10, 1929, P. L. 476, 68 PS section 481, for the "difference between the proceeds of the conversion . . . and such higher value as the property may have reached within a reasonable time after he had notice of the conversion." This liability was not satisfied by the payment made in satisfaction of the decree in equity. The case-stated shows that the highest value after the conversion was $25.00 per share and that that value was not reached at any later period covered by the case-stated. The total damages there-

---

[1] See Equity Rule 18.
[2] See also, Warren: Trover and Conversion, 1936, pp. 81 et seq.

fore resulting from the conversion of 285 shares (see *Foley v. Wasserman,* 319 Pa. 420, 179 A. 595) would be $7,125.00. As the plaintiff received in the settlement of the equity suit $4,446.00, the difference, $2,679.00 is the amount for which judgment should be entered with interest as compensation for the wrong.

The judgment is reversed and record is remitted for entry of judgment accordingly.