## Stearns *versus* The Merchants' Bank.

1. A party cannot impeach the character of his own witness, or discredit him by evidence of general bad character.

2. A party cannot discredit his own witness by proving his contradictory statements upon other occasions, but must be restricted to proving the facts otherwise by other evidence.

3. How far a party calling a witness can impeach or discredit him by proving declarations conflicting with his statements under oath, discussed in the opinions in this case.

ERROR to the Court of Common Pleas of *Erie county*.

This was an action of assumpsit, commenced October 14th 1862, by the Merchants' Bank of Cleveland against Edward H. Stearns and William R. Stearns, trading as Stearns & Son. The suit was on a promissory note for $288.85, at three months, made by the defendants to Champlin & Co., endorsed by them to George Carey & Co., and by them to the plaintiff.

The defendants took the depositions of T. P. Handy, President, and William L. Cutter, Cashier of the Merchants' Bank, the plaintiff, both of whom testified that the note at the time it was discounted was owned by Carey & Co., and that it had since been taken up by them. These depositions were filed September 21st

[Stearns *v.* Merchants' Bank.]

1863. The plaintiff afterwards took the depositions of the same T. P. Handy and William L. Cutter; Cutter testified that he was mistaken in his former deposition, in saying that the bank did not own the note; that in fact Carey & Co. had declined to take up the note, and insisted that the bank should collect it from the other parties; that he had placed the note in the hands of Willey & Carey for collection, and produced their receipt for it; after stating the circumstances which led to his former mistake, he testified that the note had "never been paid to the bank or taken up." Handy testified substantially as Cutter. These depositions were filed February 6th 1864.

On the 8th of December 1864, the defendants entered a rule for a commission to take depositions at Cleveland, but no interrogatories were filed. On the 18th of February 1865, they entered a similar rule, appointing the same commissioner, and filed interrogatories, "to be exhibited to William L. Cutter and other witnesses." The plaintiff named a commissioner under the last rule. No depositions were taken under either of these rules.

On the trial, before Derrickson, A. J., the plaintiff gave the note in evidence, and rested. The defendants then read the depositions of Handy & Cutter as taken by them, and the plaintiff afterwards read the depositions of same witnesses, subsequently taken on behalf of the bank.

The defendants then offered a witness to prove, that *after* the deposition of Cutter was taken he,—the witness,—was at the plaintiff's bank, and, in conversation with Cutter, was informed by him that what he testified to in his first deposition was correct, and that he had examined the books of the bank, and saw that the note had been discounted for Carey & Co., who were credited with the amount, and that after the protest they had been debited with it, and the note given up; that the receipt of Willey & Carey was returned to them, and the note sued in the name of the Merchants' Bank; that the receipt was taken from Willey & Carey for the purpose of concealing the real owner of the note; and further, that George Carey & Co. agreed to keep the Merchants' Bank harmless from the payment of costs in the collecting of the note, if the bank would allow them to use the name of the bank in the collection of the note; which was objected to, rejected and an exception taken.

The verdict was for the plaintiff for $348.61, on which judgment was entered September 2d 1866.

The defendants having removed the case to the Supreme Court, they assigned for error the rejection of the evidence offered by them.

*B. Grant,* for plaintiffs in error, cited Bull *v.* Towson, 4 W. & S. 557; Stahle *v.* Spohn, 8 S. & R. 325; McKee *v.* Jones, 6 Barr 425; Craig *v.* Craig, 5 Rawle 91.

[Stearns *v.* Merchants' Bank.]

*J. W. Wetmore,* for defendant in error, cited Bull *v.* Towson, 4 W. & S. 557 ; Stahle *v.* Spohn, 8 S. & R. 325 ; Craig *v.* Craig, 5 Rawle 98 ; Good *v.* Good, 7 Watts 202 ; 2 Phillips's Ev., 944, 5 ; 1 Starkie 148, 9 ; McKee *v.* Jones, 6 Barr 425 ; Stockton *v.* Demuth, 7 Watts 41 ; Smith *v.* Price, 8 Id. 447 ; Adlum *v.* Yard, 1 Rawle 167.

The opinion of the court was delivered, January 14th 1867, by READ, J.—It has been decided that a party cannot impeach the character of or discredit his own witness, by evidence of general bad character, but it has been a subject of discussion how far a witness could be impeached, or discredited, by the party producing him by proving declarations and statements conflicting with his statements under oath.

The latest authorities in England, previous to the change by the Common Law Procedure Act, stand thus :—

In Phillips and Arnold's treatise upon Evidence (1852), vol. 2, p. 540, it is said : " It must be admitted that the weight of modern *authority* is in opposition to the opinion, reasoning and arguments of Lord Denman," who advocated their admissibility, and the same conclusion seems to be arrived at by the learned editors of Starkie on Evidence, in 1853, vol. 1, pp. 250, 251, and in an early edition of Taylor on Evidence, vol. 2, p. 951, it is said : that "·the weight of authority in this country is decidedly in favor of rejecting such proof." In the last edition of Greenleaf on Evidence, by Judge Redfield, in 1866, vol. 1, s. 444, *a,* the doctrine is stated distinctly, that such evidence cannot be admitted. In speaking of the admission of such evidence, the editor says, p. 491 : " But you cannot do this for the mere purpose of discrediting the witness, nor can you be allowed to prove the contradictory statements of the witness upon other occasions, but must be restricted to proving the facts otherwise by other evidence. And the same rule prevails in the courts of admiralty, and this seems to us to be placing the matter upon its true basis."

In Thompson *v.* Blanchard, 4 Comstock 311, the Court of Appeals of New York (Jewett, J., delivering the opinion), after stating the general rule as to a party impeaching his own witness, say, " It was competent then for the plaintiff to show what took place at the time the deed was given by Wheeler to Thompson, and to show that neither the plaintiff nor Wheeler made the declaration to which Wheeler had testified. The plaintiff, however, went further, although objected to, and gave evidence that Wheeler, at a subsequent time, made statements contradictory to the statements to which he testified. Such evidence is only allowable in any case with a view to the impeachment of the witness, a ground not open to the party producing the witness. The judge, therefore, erred in admitting the evidence.";

In The People *v.* Safford, 5 Denio 118, cited by Judge Jewett,

[Stearns *v.* Merchants' Bank.]

the old Supreme Court of New York said, " Evidence that contradictory statements have been made by a witness is only allowable with a view to his impeachment, a ground not open to the party producing the witness. The answer to an offer like that, from such a party, should be given in the words of Mr. Justice Patteson in a similar case, ' he is your witness, and you must treat him as such.' "

In 2 Taylor on Evidence, 1212, 4th ed. 1864, § 1282, it is said: " The Common Law Procedure Act, 1854, contains in § 22 the following salutary though ill-drawn enactment on this subject:— ' A party producing a witness shall not be allowed to impeach his credit by general evidence of bad character, but he may, in case the witness shall, in the opinion of the judge, prove adverse,' that is ' hostile,' as contradistinguished from being merely unfavorable, ' contradict him by other evidence, or *by leave of the judge* prove that he has made at another time a statement inconsistent with his present testimony, but before such last-mentioned proof can be given, the circumstances of the supposed statement sufficient to designate the particular occasion must be mentioned to the witness, and he must be asked whether or not he has made such statement.' "   See 3 Chitty's Collection of the Statutes 774, 3d ed. ; Greenough *v.* Eccles, 28 L. J. C. P. 160.

This last provision of the statute is the established rule where the credit of an opposing witness is to be impeached by proof— that he has made statements, out of court, on the same subject, contrary to what he has sworn at the trial—" and provided also, that such statements are material to the question in issue :" 2 Phillips on Evidence 432, and 10th ed. by Phillips & Arnold, vol. 2, p. 504; 1 Greenleaf's Ev. § 462, p. 511 ; Wright *v.* Cumpsty, 5 Wright 110 ; Wertz *v.* May, 9 Harris 274.

In Stockton *v.* Demuth, 7 Watts 39, Judge Sergeant said : " It would seem, however, that he cannot contradict his witness by adducing any act or declaration of the witness himself of a contrary tenor, for where a witness called for defendant to prove a partnership between him and the defendant, denied the fact, an answer made by the witness in Chancery, in which he had stated the contrary, was not admissible, because its only effect would be to impeach the credibility of the witness, though it was competent to the defendant to prove the fact of partnership by other means."

In Smith *v.* Price, 8 Watts 447, it was held that " a party cannot after examining a witness give in evidence his former testimony and declarations, ostensibly to discredit him, but in truth to operate as independent evidence." The per curiam opinion is in the strong, nervous language which characterized C. J. Gibson: " This was a very ingenious device, but it must not succeed. To introduce testimony formerly given by the plaintiff's son, before arbitrators, and to get his naked declarations before the jury, he was

first called as a witness, and his former testimony and declarations were afterwards offered and received, ostensibly to discredit him, but in truth to operate as independent evidence ; and it would have been very powerful, considering the relation in which he stands to the plaintiff. But no man shall discredit his own witness. If he thought him unworthy, he ought not to have called him, and it will not be pretended that the former testimony of the son was competent as direct and independent proof." In Southwark Ins. Co. *v.* Knight, 6 Whart. 330, 1841, Judge Sergeant says : " He cannot even discredit his own witness, though he may prove the facts to be otherwise than as stated by him :" Stockton *v.* Demuth, 7 Watts 39 ; and these cases are again cited by the same learned judge, although for another purpose, in Turner *v.* Waterson, 4 W. & S. 175 (Sept. 1842) ; see also Logan *v.* McGinnis, 2 Jones 32. In Bull *v.* Towson, 4 W. & S. 557, the offer was by the defendant to discredit the plaintiff's witness by producing a deposition of the witness in which he gave a different account from what he testified on the trial, and this was clearly admissible by all the authorities : Wertz *v.* May, 9 Harris 274.

The present case is a peculiar one. It was an action of assumpsit on a promissory note made by the defendants to the order of Champlin & Co., and endorsed by them and George Carey & Co. to the Merchants' Bank of Cleveland, Ohio, the plaintiffs. The defendants alleged that the note was taken up by George Carey & Co., and that the bank had no interest. This was done to make available any defence the defendants had against the payees and endorsers.

The defendants entered a rule for a commission to Mr. Baldwin, of Cleveland, Ohio, to take testimony, and on the 23d of July 1863 the commission issued, and was returned on the 21st September, with the depositions of T. P. Handy and W. L. Cutter, president and cashier of the bank, to prove that the note was taken up by Carey & Co., and that the bank had no interest in it. The plaintiffs do not appear to have joined in this commission, or to have filed cross-interrogatories.

On the 27th October 1863 the plaintiff entered a rule for a commission to R. E. Mix, Esq., of Cleveland, Ohio, to take testimony. On the 18th November defendants filed cross-interrogatories, and named Mr. Baldwin as commissioner, to act in conjunction with the one named by plaintiffs. On the 6th February 1864 this commission was returned and filed, with the depositions of the same witnesses, taken on direct and cross interrogatories, by a commissioner of each party. These depositions show that the witnesses were entirely mistaken in their first depositions, and that the bank owned the note.

On the 8th December 1864 the defendants entered a rule for a commission to Lewis W. Ford, of Cleveland, to take depositions,

[Stearns *v.* Merchants' Bank.]

but no interrogatories were filed. February 18th 1865, the defendants entered another rule, appointing the same commissioner, and filed interrogatories to be exhibited to W. L. Cutter of Cleveland, and other witnesses. The plaintiffs named Robert E. Mix as joint commissioner. No depositions were taken on either of these commissions. The cause was tried in December 1865, and resulted in a verdict for plaintiffs, on the 13th of that month, of $348.61, and on the 2d September 1866 judgment was entered upon it.

The interval between the verdict and the judgment was filled up with a motion for new trial on the 15th December 1865, which was discharged on the 29th August 1866, the charge of the court being filed on the 15th June. We have not the commissions and depositions which are the subjects of the controversy, but only the statements of counsel of their contents, or rather of their effect, and the bill of exceptions does not state what they were. The practice at Washington of printing the whole record, would in this case have placed the whole matter before the courts.

Taking, however, the record as given to us, and the statements of counsel, it appears that the defendants, by a commission not joined in by the plaintiffs, took the depositions of two witnesses, which went to prove their defence. Then the plaintiffs took out a commission in which the defendants joined, and the same witnesses were examined on interrogatories and cross-interrogatories, which depositions, so taken, showed that the witnesses were totally mistaken in their former depositions, and that the bank owned the notes.

In this state of the testimony, the defendants entered rules for commissions to Cleveland; in the last they filed interrogatories to be exhibited to W. L. Cutter, one of the same witnesses in this commission. The plaintiffs joined, but no depositions were taken under either, and no reason is assigned for not doing so.

Instead of executing a commission, a gentleman of the bar, the attorney of the defendants, without any notice to the plaintiffs' counsel, as it would appear, went to Cleveland, and had an ex parte private conversation with Mr. Cutter only, and this gentleman is offered to prove Cutter's declarations in this conversation, to impeach or destroy his former testimony.

This is a very startling proposition, evincing an entire disregard of the rights of the opposite party, and a sacrifice of a witness without his having the slightest opportunity to tell the real truth under oath. It is substituting a private conversation with counsel for an open examination by a tribunal, or by its duly appointed officer. The court properly rejected the whole offer.

Judgment affirmed.

Concurring opinion by

THOMPSON, J.—I concur in the result at which my brother Read has arrived in this case, but cannot agree in his statement

of the rule in regard to what may be proved by a party calling a witness when the witness swears directly against him. I hold that he may prove different or opposite statements from that sworn to by the witness, made on other occasions; not, I admit, for the purpose of discrediting him or tainting his veracity. Having given him credit by calling him, he cannot do this, but he can dispose of the effect of the testimony, and credit given by his act in calling him, by showing that he had declared differently at other times. And if he make such proof, he has a right to insist that he is no more to be affected by his testimony than that of an adverse witness attacked in the same way. Deplorable would be the condition of a party deceived into calling a witness by the dishonesty of the witness, or the chicanery of the opposite party, if he can neither say nor do anything to protect himself against such conduct. The rule is different with us, and so I claim are the elementary books, at least some of them, most in use with us.

In Sharswood's Starkie, p. 245, after stating how far, where a party is surprised by the statement of his own witness, he may call other witnesses to contradict him, and the effect of the testimony, he says: "Doubt has been entertained on the question whether it be competent to a party to impeach the testimony of his own witness, as to a particular fact, by proof that on a former occasion he gave a different account, and so to contradict him by his own statement. The resolution of this doubt depends, as it seems, on the consideration, whether in the abstract such evidence is essential to justice, and if so, then whether the party is to be excluded from such evidence, either by reason of any objection in the nature of an estoppel, or any collateral inconvenience which might result." The learned author, after adducing reasons in support of his meditated conclusion, renders that conclusion as follows: "In such, and many other cases which might be put, it would be a harsh rule to exclude the party from defeating the attempt (to trick him by a fraudulent witness) by evidence of the witness's own statements on the subject." To sustain this as the rule, the learned editor cites 12 S. & R. 281; 1 Hay. 429; 5 Mass. 334; 4 Pick. 179. According to Starkie, the rule thus appears to be in favor of introducing the declarations of the witness made at other times and on other occasions, differing from his testimony by the party calling him.

In 1 Greenleaf's Ev., § 444, the like doctrine is to be found. The author, treating of the point, says: "Whether it be competent for a party to prove that a witness whom he has called, and whose testimony is unfavorable to his cause, *had previously stated the facts in a different* manner, is a question upon which there exists some diversity of opinion. On the one hand, it is urged that a party is not to be sacrificed to his witness; that he is not

represented by him, nor identified with him ; and that he ought not to be estopped by the acts of a designing man, perhaps in the interest of his adversary.   On the other hand, it is said, that to admit such proof would enable the party to get the naked declarations of a witness before a jury, operating in fact as independent evidence, and this, too, even where the declarations were made out of court by collusion, for the purpose of being thus introduced.   But the weight of authority seems in favor of admitting the party to show that the evidence has taken him by surprise, and is contrary to the examination of the witness preparatory to the trial, or to what the party had reason to believe he would testify ; or that the witness has recently been brought under the influence of the other party, and has deceived the party calling him.   For it is said that this course is necessary for his protection against the contrivance of an artful witness ; and that the danger of its being regarded by the jury as substantive evidence is no greater in such cases than it is where the contradictory declarations are proved by the adverse party ;" and in note 3 to the section, many authorities are referred to in support of the position.

This rule is also laid down in Cowen & Hill's edition of Phillips on Ev., vol. 2, p. 450, and in note 392, citing to the same point the case of Perry v. Massey, 1 Bail. 32.

The above rule is very distinctly affirmed in Cowden et al. v. Reynolds, 12 S. & R. 281, in which Tilghman, C. J., said : " But even if he had been strictly the plaintiff's witness, there was no attempt to impeach his general character, but only to show he had contradicted himself, and thereby to lessen the force of what he had sworn in court.   There is no rule of law against this, and hard indeed would be the case if one who calls a witness, expecting that he would swear the truth, if, upon finding himself deceived, he may not show that the witness had told a different story at another time."   In The Bank of the Northern Liberties v. Davis, 6 W. & S. 285, Cowden v. Reynolds is cited by Rogers, J., and the language of Tilghman, C. J., quoted as an authority for the rule in that case.   The learned judge himself, after referring to the case where a witness prevaricates, swears against the party calling him, or appears to be in concert with his antagonist, says : " The court before whom the case is tried has always, in the exercise of a sound discretion, allowed the party calling him to prove that at different times, and in the presence of other persons, he has held different language."   So in De Lisle v. Priestman, 1 Br. 176, said to have been affirmed in the Supreme Court, 2 Whart. Dig. 954, the same rule is laid down.   In Harden v. Hays, 9 Barr 151, not only was the rule affirmed, but the party calling the witness was allowed to contradict him by his former testimony. Again, in McKee v. Jones, 6 Barr 425, the rule is stated, and,.

3 P. F. Smith—32

moreover, it was therein held that it is within the discretion of the court, whether the witness shall, *before* such contradiction is offered, be asked whether or not he made such contradictory statements.    The same thing is stated in Sharp *v.* Emmett, 5 Wh. 288, and in Kay *v.* Fredrigal, 3 Barr 221.    This case was somewhat like the present.    Both parties had taken the deposition of the witness, the plaintiff first; the defendant afterwards, and in this he contradicted his first oath.    The plaintiff, in answer to this deposition, was permitted to prove declarations of the witness made before either deposition was taken, to show that he had made declarations contradicting his second deposition.    This was a palpable contradiction by the party of his own witness.    In the case in hand the declarations were made after both depositions were taken.    I need not insist that the rule is the same in both cases; I only say that a party may contradict his own witness when he is deceived by his testimony.

The case of Stockton & Stokes *v.* Demuth, 7 Watts 39, relied on for an opposite rule, is an older case than those cited above, excepting one, perhaps, and I do not think it proves what is claimed for it.    The witness testified against the plaintiff, who wished to prove sending a package of goods by stage to a certain point.    In place of proving this, he swore he had no recollection whatever of doing so.    He was the plaintiff's own witness, and he was permitted to prove his former declarations that he had sent the package.    This was contradicted by former declarations put in proof by the party calling the witness, and no disguise can change its character.    This court affirmed this ruling.    It is true the court held what is herein admitted, that a witness cannot be discredited and impeached so as to enable the party calling him to allege want of veracity.    The party cannot do that.    But that is distinguishable from showing that as the witness stated the facts differently before being called, the plaintiff was misled in calling him, and that he is not to be prejudiced by the testimony under such circumstances.    It is the existence of the former declarations which brings into play this rule, at least in most cases.    I do not regard the decision as a contradiction of the rule where the point decided is alone regarded.    That the general principle is strongly stated by the learned judge is true, and more strongly than the rule as contended for admits, is equally true.    But this was but process in arriving at a conclusion, not the judgment of the court. Nor is the judgment consonant with the process, without a refinement of logic, in my judgment, entirely beyond any practical use.

In Craig *v.* Craig, 5 Rawle 91, it was held, and on the clearest authority, that a party calling a witness who swears against him as to a particular fact or facts, may prove the facts to be different by other witnesses.    This rule is so well settled that I will not refer to authorities in regard to it.    What is this but the party

[Stearns *v.* Merchants' Bank.]

contradicting his own witness? If he may do it in one legal mode, why may he not in another? Contradictory statements is a mode of contradicting a witness—so is the proof of a different state of facts by other witnesses. The latter may be resorted to by a party against his own witness. So says Craig *v.* Craig. What rule of fair dealing or justice forbids the other mode? Precisely the same sort of general objection exists against both; that is, that the plaintiff cannot impeach his own witness. Neither can he: but that is not what is proposed. He may contradict him as to his relation of the fact, in order to prevent his being bound by falsehood or mistake, and in furtherance of justice.

Smith *v.* Price, 8 Watts 448, is not against the rule contended for. The effort in that case was to call a witness who it seems it was known would swear against the defendant, and then to introduce his former testimony before arbitrators to the contrary, as independent evidence of the facts denied. This the court said could not be done, and that this was what was attempted appears from the first sentence of Gibson, C. J., who, it is presumable, wrote the per curiam. "This," says he, "was a very ingenious device; but it must not succeed." He then goes on to repudiate the attempt. This was the point of that case, and the only one which passed under judgment by this court. The declaration that a man shall not discredit his own witness under such circumstances no one will dispute. Nor will any one dispute the rule to be that a party shall not *impeach or taint* his own witness; but that is not equivalent to saying that he may not show that he is not under all circumstances to be bound by what he has testified to. But I must not extend this opinion, already too long. I consider the rule which I have attempted to vindicate not only well settled, but most conservative of the ends of justice, and ought not to be abrogated; nor do I think this case needs this decision upon it in order to produce the result desired. The device resorted to was neither usual nor creditable, and if encouraged would lead to infinite fraud and perjury. Nor could the party claim to have been misled into calling the witness; no declarations contrary to his testimony were outstanding, but the declarations were obtained for the purpose of being used to contradict the sworn statement of the witness, and might easily be obtained, if allowable, especially from a witness, who might think it much less criminal to tell a falsehood without oath than to testify falsely. This was an attempt at an erroneous application of a good rule, but which neither the court below nor this court can sanction. I agree that the judgment should be affirmed.

AGNEW, J.—I concur in the foregoing opinion.