## Gantt v. Cox & Sons Company, Appellants.

*Equity—Equity pleading—Responsive answer by officer of corporation.*

The answer of a corporation sworn to by the proper officer having personal knowledge of the facts, is within the equity rule as to the weight of a responsive answer as evidence.   The rule requires that the officer making oath to the answer to give it responsive force, must be one having knowledge of the facts.

On a bill in equity against a corporation for an account under an alleged contract, a responsive answer denying the contract is overcome, where it appears that the evidence of the plaintiff, and of the secretary of the defendant as to the contract was directly conflicting, but the correspondence between the plaintiff and the corporation fully corroborated the plaintiff.

*Evidence—Competency of witness—Cross-examination—Officers of corporation.*

Although the officers of a corporation may not be called adversely as if for cross-examination, yet if they come under the class of necessary un-

willing or adverse witnesses, leading questions may be put to them, and their testimony may even be contradicted.

The rule that a party calling a witness, is not permitted to ask leading questions, and is bound by his testimony, is liberally construed in modern practice, with a large measure of discretion in the court to permit parties to elicit any material truth without regard to the technical consideration of who called the witness. It is a discretion not susceptible of exactly defined limits beforehand but to be exercised in the interests of justice and a fair trial under circumstances as they arise. Per MITCHELL, J.

If the officers of a corporation which is a party to the suit, though nominally called for cross-examination, are not asked any questions that might not have been asked if they had been called in chief, and no attempt is made to impeach their testimony, the technical error of calling them as for cross-examination, is harmless.

*Contract—Building according to plans—Patent.*

Where a corporation agrees to pay a certain sum for each glass furnace which it builds according to a set of plans and working specifications delivered to it by the owner, and there is no use of a patent right or invention, the corporation is bound to pay for each furnace that it constructs according to the plans, and the question of the novelty of the design is immaterial.

Argued Jan. 9, 1901. Appeal, No. 194, Jan. T., 1900, by defendant, from decree of C. P. No. 4, Phila. Co., Dec. T., 1898, No. 418, on bill in equity in case of Henry L. Gantt v. The Cox & Sons Company. Before McCOLLUM, C. J., MITCHELL, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Bill in equity for an account.

The bill averred that the plaintiff had designed and developed a new and useful improvement in furnaces for the melting of glass whereby the furnaces were to have semicircular ends and thus known as "round-nosed," and that both regenerators should be at one end instead of opposite ends, as in other furnaces, and that it was to be adapted for the use of oil as fuel, and that glass would be melted therein by night and worked out or blown out on the following day. That he invented the said improvements and embodied the same in certain designs and plans which contained the only drawings in accordance with which such round-nosed furnaces could be or ever had been successfully constructed and operated. That on or about May 18, 1895, he made a verbal contract with the defendant whereby he was to receive $200 on account of each and every furnace that might be constructed by the defendant in accordance with

the said plans. That the defendant did construct one furnace at Millville, N. J., and which was in every respect successful and satisfactory, and that the defendant made the payment due thereon. That the defendant had constructed for various firms and corporations a large number of furnaces in accordance with the said plans for which no account had been made, and he prayed for an account.

An answer denying the contract was sworn to by the president of the company, but it did not appear that he had direct knowledge of the facts.

Under objection and exception the president and the secreary were permitted to be called as for cross-examination.

AUDENRIED, J., found the facts to be as follows:

1. The Cox & Sons Company is engaged in the foundry and machine business. It was brought into close relations with the plaintiff through their common employment in the construction of a glass furnace at Williamstown, N. J., during the winter of 1894–1895. In the spring of 1895, negotiations were opened between plaintiff and defendant looking to the acquisition by the latter of the former's plans for a glass furnace, which embodied the idea of the location of the regenerators together at one end instead of on both sides, as usual, a convex front ("round-nose") for the convenience of the workmen engaged in blowing, and the use of oil for fuel. These negotiations were conducted, on the side of the defendant, by its secretary and treasurer, Charles F. Cox, a civil engineer. On May 15, 1895, the plaintiff wrote to the defendant as follows:

"PHILADELPHIA, PA., May 15, 1895.

"THE COX & SONS COMPANY,
    "Bridgeton, N. J.

"Gentlemen: According to my agreement with your Mr. Chas. F. Cox, I forward you under another cover, blue prints 110, 111 and 112, being complete detail drawings of my round nosed oil fired flint day tank. I also enclose specifications and bill of material for same. The contract as I understand it is that the Cox & Sons Company shall pay me two hundred ($200) dollars for each and every furnace they build or cause to be built, or furnish plans for according to my designs as shown on

blue prints 110, 111 and 112.   It is further understood that I shall receive the said compensation even if the design is modified in detail so long as my general idea is adhered to.   It is further agreed that the Cox & Sons Company shall have the exclusive right to build said furnaces as long as they build at least one per year.   If the Cox & Sons Co. should have the opportunity and see fit to undertake the erection of a gas fired tank of this type, I shall be pleased to furnish plans and specifications and render such assistance in the matter as my other duties may permit, for the sum of two hundred dollars and expenses for each and every furnace constructed.   The Cox & Sons Co. shall not have the exclusive right to build these furnaces during the coming year, but may acquire it for the following year, if they build during the coming year three or more gas fired furnaces of this type, and may hold it as long as they continue to build each year at least as many as three such furnaces.   Should they fail, however, to build three in any year they shall still have the right, but not the exclusive right to build them.   If the specifications are not full enough, any more information is needed, I shall be glad to supply it.   I would advise your checking the bills of materials before using them.

" Yours truly,

" H. L. GANTT."

Under the same date the plaintiff wrote to Chas. F. Cox : " You will note that I have drawn up the contract just a little differently from what we talked about.   You have the right to build the oil-fired furnace indefinitely, but only the exclusive right to build so long as you build at least three per year."

To his letter to the defendant the plaintiff received the following reply :

" BRIDGETON, N. J., May 17, 1895.

" MR. H. L. Gantt,

    " 915 Edgemont Ave., Chester, Pa.

" Dear Sir : We have yours of the 15th all of which we accept with one exception, that is that we be compelled to build one oil-fired tank during the first year of our agreement.   This may or may not be possible and owing to the present price of

oil we think impossible.   Will you send us a letter in accordance with the above, and oblige.

"Very truly,

"THE COX & SONS CO.,

"CHAS. F. COX."

So, far, of course, no contract had been formed.   The defendant's acceptance introduced a new term uncontemplated by the plaintiff, and was, as its secretary and treasurer puts it, a mere "offer," not binding until accepted by a "letter" from the plaintiff "in accordance" therewith.   Mr. Gantt, however, testified that within a few days after receiving the letter last quoted, he assented to its terms, but could not say whether he had done so verbally or in writing.   It is admitted that all oral communications that passed in this matter were between Charles F. Cox and the plaintiff, and that none of their interviews took place in the presence of witnesses.   Now, Mr. C. F. Cox testified that "after the correspondence the company did not see fit to go to take it (the plans) up any further," and that at a conversation held in Philadelphia, but just where he couldn't say, some time in May or June, 1895 ("I should say within two weeks after that letter" of May 15), he told the plaintiff that he would personally "go into it," with plaintiff, "for any future business."   This witness through all his testimony assumes that there was no contract between plaintiff and defendant, because the former had failed to accept the latter's counterproposition; and insists that the only "arrangement" extant for the use of the plaintiff's plans was made with himself individually.   But this assumption is without foundation.   Along with a mass of other letters, produced by the defendant on call, and offered in evidence for the plaintiff (without, apparently, having been read by counsel on either side), we find the following letter written by Mr. Gantt to the defendant:

"PHILADELPHIA, PA., 5/22, 1895.

"THE COX & SONS CO.,

 "Bridgeton, N. J.

"Gentlemen: Replying to your favor of the 17th inst., I beg to say that it arrived during my absence, and this is my first opportunity to answer it since I got back.   I am perfectly willing to give you the exclusive right to build the round nosed

oil fired tank for two years from date on the terms proposed
even though you should not build a tank during the first year.
If you should build one during the first two years you would
have the exclusive right for the third year, and so on as per
my letter of the 15th inst. If, however, you should fail to
build at least one tank during the first two years from this date,
the right to build would still be yours but the subject of exclu-
sive right would be an open question to be decided between us
at the time when it arrives.

" Yours truly,<br>" H. L. GANTT."

This is a formal acceptance of the defendant's counterpropo-
sition, and definitely closed the contract between these parties.
There is nothing in the correspondence produced or in the acts
of either side which is at all inconsistent with the existence of
such an arrangement. Even the letter of Charles F. Cox,
written November 17, 1898, is so weak a denial as to be tanta-
mount, almost, to an admission that Gantt had made the con-
tract he claims ; and the failure of the defendant to deny
Gantt's assertions of his right to an accounting with prompt-
ness and emphasis is a circumstance persuasive of the justice
of his contention. In view of the very close relation borne by
Mr. Charles F. Cox to the defendant company, the payment
of the $100 received by Gantt in June, 1896, by Cox's check,
is absolutely without bearing on the question to whom the
plaintiff is to look for his money; while Gantt's acceptance of
a less sum on the Millville furnace than that to which his con-
tract entitled him is susceptible of a satisfactory explanation,
without resort to the theory that his contract with the defend-
ant had been rescinded or never made.

On the first point, therefore, our finding is for the plaintiff.

2. The second question is not difficult. Charles F. Cox, the
defendant's secretary and treasurer, called as under cross-ex-
amination, testified that since the Gantt plans had come into
his hands, the defendant had built seven round-nosed oil-fired
day tank furnaces, and furnished plans for the construction of
another. These all, except one, are alike. The plan in each
case was prepared by the witness, who, having incorporated
many improvements or modifications of the plans originally ob-

tained from the plaintiff, regarded the design as entirely original. Nevertheless, he admitted that with this type of furnace he had no acquaintance until he acquired the plaintiff's plans; and a comparison of the plans offered in evidence readily discloses the persistence of the regenerator arrangement and the furnace shape suggested by the plaintiff.

With the first furnace erected by the defendant for Whitall, Tatum & Company, at Millville, we are not concerned. The royalty on that structure was commuted for the $100 the plaintiff received from the defendant in June, 1896.

On the seven other furnaces mentioned the plaintiff is manifestly entitled to his stipulated compensation.

The defendant filed, among others, the following exceptions :

1. The court erred in holding that the answer of the defendant was effective only to put in issue the facts which it denies.

2. The answer of the defendant being responsive to the bill of the plaintiff, and being sworn to by the president of the defendant corporation, there was not sufficient evidence presented by the plaintiff to sustain his bill.

3. The court erred in allowing William P. Cox, of the defendant company, and Charles F. Cox, also of the defendant company, to be called by the plaintiff as witnesses as if under cross-examination.

4. The plaintiff failed to prove that he designed a new and useful improvement in furnaces for the melting of glass.

The court in an opinion by AUDENRIED, J., dismissed the exceptions.

*Errors assigned* were in dismissing the exceptions.

*Frederick A. Sobernheimer*, for appellant.—The answer was responsive to the bill: Hayward *v.* Eliot Nat. Bank, 4 Clifford (U. S.), 294.

William P. Cox, the president, and Charles F. Cox, the secretary of the defendant company, were improperly called by the plaintiff as witnesses as if under cross-examination.

It is submitted that even if there was a contract in favor of the plaintiff and against the defendant, that it should be shown clearly that the furnaces constructed were in accordance with the plans of the plaintiff : Geiger *v.* Cook, 3 W. & S. 266.

It will be noticed from the letters upon which the plaintiff depends to make out a contract, that he was selling his design and improvement in the making of furnaces, this proved to be no improvement, being already covered by patents, so certainly there was a failure of consideration, as the plaintiff had nothing to sell, and there should be no recovery.

*Reynolds D. Brown*, with him *Malcolm Lloyd, Jr.*, and *Charles H. Burr, Jr.*, for appellee.—The effect of an answer under the corporate seal is simply to put in issue the allegations of the bill : Griffin v. State Bank, 17 Ala. 258; State Bank v. Edwards, 20 Ala. 512 ; Fulton Bank v. New York & Sharon Canal Co., 1 Paige, 311 ; Bouldin v. Baltimore, 15 Md. 18 ; Md. & N. Y. Coal & Iron Co. v. Wingert, 8 Gill (Md.) 170 ; Lovett v. Steam Saw Mill Association, 6 Paige, 54.

If the plaintiff desires discovery or otherwise desires an answer under oath, he should join as defendants the officers of the corporation : Wych v. Meal, 3 P. Wms. 311; Glasscott v. Copper-Miners Co., 11 Sim. 305 ; Gibbons v. Waterloo Bridge Co., 5 Price, 491 ; Wright v. Dame, 1 Metc. 237 ; Vermilyea v. Fulton Bank, 1 Paige, 37 ; Many v. Beekman Iron Co., 9 Paige, 188; First National Bank v. Bristol Iron & Steel Co., 31 W. N. C. 503.

Though it be admitted for the sake of argument that a corporation may make its answer responsive by filing it under oath, it is perfectly certain that such answer is not responsive unless it is signed and sworn to by an officer who is cognizant of the facts : Fulton Bank v. New York & Sharon Canal Co., 1 Paige, 311 ; McComb v. Chicago, etc., Ry. Co., 19 Blatchford, 69 ; Ex parte Cincinnati, Selma & Mobile Ry. Co., 78 Ala. 258.

If a stockholder has such an interest as disqualifies him from testifying, a fortiori has an officer such interest, inasmuch as the outcome of the litigation almost invariably is either a ratification or criticism of his official actions. If, then, an officer of a corporation was at common law disqualified to testify in its behalf because of his interest therein, it certainly follows that the law now permitting the party to summon as witnesses any persons whose interest is adverse permits the summoning as such witnesses of officers of all adverse corporations.

OPINION BY MR. JUSTICE MITCHELL, April 29, 1901 :

The answer of a corporation sworn to by the proper officer having personal knowledge of the facts, is within the equity rule as to the weight of a responsive answer as evidence : Kane v. Ins. Co., ante p. 198.

The general proposition therefore on which the learned judge below rejected the answer in this case as evidence and treated it as mere pleading was erroneous.   But the application of the rule to the case was correct.   An answer in equity gets its responsive force from the personal knowledge of the witness.   The matters in issue between the parties here were first, the terms of plaintiff's contract, secondly, the parties to it, that is, was his contract with the corporation defendant, or with Charles F. Cox, its secretary, in his individual capacity.   On these issues it was specifically found by the judge that the president by whom the answer was sworn to, had no knowledge except by hearsay, not having been present at any of the oral negotiations, which took place entirely between plaintiff and the secretary.   The rule requires that the officer making oath to the answer, to give it responsive force, must be one having knowledge of the facts : Riegel v. American Life Ins. Co., 153 Pa. 134.

But even if the answer be given full force as responsive to the bill, it was overcome by the evidence on the other side.   The oral negotiations were conducted entirely by the plaintiff and the secretary of the defendant, whose testimony was directly conflicting and there were no other witnesses.   But the correspondence amply corroborated the plaintiff.   His written proposition was addressed to the company, it was answered by the company per its secretary, suggesting a modification, and this was agreed to by plaintiff in writing addressed as before to the company.   This was of itself sufficient to establish a contract in writing with the company, and the judge found that there was nothing in the subsequent oral communications between plaintiff and the secretary at all inconsistent with the writings.

The third assignment is based on the allowance by the court of the calling of the officers of the corporation adversely as if for cross-examination.   This was technically an error.   The officers of a corporation not shown to be stockholders prima facie are mere agents or servants having no direct interest in the suit which prevented them from being witnesses at common law, or

enables the opposite party to call them under the statute as if for cross-examination. But the error did appellants no harm, for the officers so called might readily come under some of the classes of necessary unwilling or adverse witnesses as to whom there is a very large discretion in the trial court to permit leading questions and even contradiction. The rule that a party calling a witness is not permitted to ask leading questions and is bound by his testimony, is liberally construed in modern practice, with a large measure of discretion in the court to permit parties to elicit any material truth without regard to the technical consideration of who called the witness. It is a discretion not susceptible of exactly defined limits beforehand, but to be exercised in the interests of justice and a fair trial under circumstances as they arise. See Bank of Northern Liberties v. Davis, 6 W. & S. 285, where the witness was the teller of the defendant bank; Harden v. Hays, 9 Pa. 151; Stearns v. Merchants' Bank, 53 Pa. 490; Farmers' Mut. Fire Ins. Co. v. Bair, 87 Pa. 124; Fisher v. Hart, 149 Pa. 232; McNerney v. Reading, 150 Pa. 611.

In the present case the officers of the defendant company though nominally called for cross-examination were not asked any questions that might not have been asked if called in chief, and no attempt was made to impeach their testimony. The technical error was harmless.

The remaining assignments are mainly to the judge's findings of facts or failure to find others as requested by appellants, and are sufficiently answered by the finding as to the contract. It was not for the purchase or use of a patent right or an invention, but for a set of plans and working specifications for a glass furnace of a particular type. The novelty, etc., of the design was not material. The judge found that the furnaces for which the decree charges the defendants were built on plaintiff's plans, with variations which the defendant's secretary considered sufficient to make them original but which the court finds substantially followed the plaintiff's design. The defendant therefore got what it bought and agreed to pay for, and the subordinate matters on which no specific finding was made were immaterial.

Decree affirmed with costs.