Lothman Cypress Co. 7578

 vs. No. 7578.

A. T. Dusenbury.

 affirmed.

June *19*, 1919.

CHARLES F. CLAIBORNE, JUDGE.

This is an action of jactitation.

By act dated January 12th, 1907, L. W. Warrick sold to the L. W. Warrick Lumber Company:

A certain tract of land situated in the Parish of St. Charles, known as the north half of section 32 in Township 11 East of the Mississippi River of Range 8 East containing 206.80 acres.

The assessment for the year 1908 for the purpose of taxation was made in the manner following:

L. W. Warrick Lumber Co:

A tract known as fractional 1/2 of sec. 32 in T. 11, East Bank of the Mississippi River - Range 8 E, containing 206.80 acres.

```
Value of Lands . . . . . . . . . . $ 1500
 " " Horses . . . . . . . . . . 180
 " " Wagons . . . . . . . . . . 50
 " " Stock in trade . . . . . 100
 " " All other property . . . 10,000
 Total $ 11,830
```

By act dated April 26th, 1911, the L. W. Warrick Lumber Company sold the same tract of land to the plaintiff herein, the Lothman Cypress Company, for the price of $500.

At the time of this last sale the parties believed that all the taxes upon this land had been paid, and that they held the tax receipts. They were correct as to all the years except as to 1909. Concerning this year, this is what had happened.

On March 13th, 1908, the following document had been recorded in the Parish of St. Charles:

"Know all men by these presents: That, I, Alfred Jackson, of New Orleans, do hereby sell, transfer, convey, set over, and assign unto Joseph Becker also of New Orleans with all legal warranties and with full substitution and subrogation in and to all my rights and actions in warranty which I may have against all former owners and vendors the following described property, to-wit:

All of Section 34

All of Section 33

S. E. 1/4 of Section 32

S 1/2 of N. E. 1/4 of Section 32

N. E. 1/4 of N. E. 1/4 of Section 32

S. 1/2 of S. W. 1/4 Section 32

N. E. 1/4 of S. E. 1/4 Section 32, and

Lots 1. 2, 3 and 4 in Section 32 and

Lot 6 in Section 31

All in Township 11 S. of Range 8 E, S. E. D. of La &c."

This description included and embraced not only the North half of Section 32 sold by Warrick to the Warrick Lumber Co. as above stated, but it also embraced lands owned by, and assessed to, W. L. Burton.

In the year 1909 an assessment was made in the name of Joseph Becker corresponding in description to the lands mentioned in the pretended sale by Jackson to Becker. There was no assessment made on the name of Warrick for the North half of Section 32; but instead the following assessment had been carried on the rolls for that year 1909:

"L. W. Warrick Lumber Co.

1 saw-mill plant, 1 million feet of lumber in yards, 3 mules, 1 buggy, 2 wagons

| | | |
|---|---|---|
| Mules . . . . . . . . . . | $ | 165.00 |
| Wagons .. . . . . . . . . | | 45.00 |
| Other property. . . . . . | | 14,500.00 |
| Total | | $14,710.00 |

The Warrick Lumber Co. paid the tax of 1909 upon the above assessment, believing that they were paying upon all their

property including their lands as usual and not noticing the
absence of any assessment of their "lands". Indeed, while the
tax receipts for the years 1907, 1908, 1910 up to 1918,contain
on the top left hand corner almost a copy of the different ob-
jects assessed such as lands, horses, vehicles and other property,
and the valuation set upon each, it is strange that nothing of
the kind appears on the tax receipt for the year 1909 - signed by
the Deputy Tax Collector.

But the tax for the year 1909 as assessed against Joseph
Becker for the Sections 32, 33, and 34 and others owned by War-
rick and Burton was not paid. They were advertised for sale by
the Sheriff; and on June 14th, 1910 they were adjudicated to the
defendant.

On April 10th, 1912, W. L. Burton filed in the Parish
of St. Charles suit No. 399 against Joseph Becker and A. T. Du-
senbury, *defendant herein.* In his petition he alleged that he was the owner of a
portion of Section 32 purchased by Dusenbury in the above tax
sale; "that Alfred Jackson had no title to the lands which he
purported to sell, and had no deeds under private signature or
otherwise transferring said lands to him, and that the sale from
Jackson to Becker was a conspiracy to defraud him of his property,
and an attempt by unlawful, fraudulent and corrupt means to ac-
quire title to valuable real estate rightfully belonging to him;
that the Sheriff of the Parish of St. Charles illegally sold the
lands described as contained in Section 32 and others; that the
assessment upon which the said tax sale was made to Dusenbury
was illegal, null,and void, and that petitioner was entitled to
have the sale based on said assessment annulled and the inscrip-
tion thereof erased from the records of the Parish; that Dusen-
bury was well aware of petitioner's ownership of said lands and
of the error made by the assessor in describing them; that for
the last twenty years he had paid all taxes on said lands; he
prayed for citation on Joseph Becker and A. T. Dusenbury, and for
judgment declaring the assessments in the name of Joseph Becker
for the years 1908 and 1909 null and void and the tax sales made
thereunder on June 14th, 1910 to A. T. Dusenbury to be null and
void, and ordering the cancellation of the sales above mentioned

from the records of the Parish of St. Charles. Becker was cited at his domicile No. 2720 Marengo Street in the City of New Orleans. He filed no answer, and as to him there was a judgment by default. Dusenbury filed a general denial. There was judgment on July 5th, 1912 annulling the tax sales of the properties of W. L. Burton made June 14th, 1910, annulling the inscriptions thereof, and recognizing Burton as the owner of the lands claimed by him. No appeal was taken from said judgment.

Notwithstanding this judgment, Dusenbury continued to assert title under his tax sale to that portion of Section 32 owned by the plaintiff. Thereupon the plaintiff filed this suit in March 1914. It alleged that it had purchased the property from the Warrick Lumber Company on April 26th, 1911 - duly registered, and gave the chain of its title tracing it back by mesue conveyances to the United States in 1849; it alleged that neither Joseph Becker nor his author, nor Dusenbury had any title to said property;it recited all the facts hereinabove stated and prayed for judgment ordering the cancellation of the tax title of Dusenbury with $300 damages, as attorney's fees.

Dusenbury denied plaintiff's ownership, and admitted that he claimed to be the owner of the property by virtue of his tax title which was neither fraudulent or null and void; he denied that plaintiff had ever at any time acquired any title to the property or that its title was registered, and he averred that by deed executed by Hon. A. Madere, Sheriff and Ex-officio Tax Collector of the Parish of St. Charles dated the 14th. day of June, 1910, registered on June 29th, 1910 in the Parish of St. Charles, Conveyance Book "O" folio 727, he acquired all the portion of section 32 described in the act of sale by Jackson to Joseph Becker for the unpaid taxes of said property for the year 1909, assessed in the name of Joseph Becker; and he pleaded the prescription of three years.

There was judgment on February 10th, 1919 in favor of plaintiff and against Dusenbury cancelling the tax title asserted by Dusenbury and for $300 damages as attorney's fees.

From this judgment Dusenbury has appealed.

The judgment, annulling the tax title of plaintiff's

property assessed in the name of Joseph Becker was undoubtedly correct. The plaintiff and its authors had continuously for years past paid their taxes upon proper assessments. The assessment of their property for the year 1909 in the name of Joseph Becker, and the omission to place opposite their names upon the assessments rolls any "lands" as had been done in all prior years, and the act of increasing the assessment on personal property to take the place of the lands not assessed, was an error or a fraud, which cannot prejudice the true owner. When the Warrick Company paid all the taxes assessed against it in 1909 it was equivalent to a payment upon all the property owned by it. This Court has decided upon the authority of repeated decisions of the Supreme Court, that a payment of taxes under an assessment made in the tax payer's name operates as a payment of the taxes due upon the property belonging to him. Purcell vs. Seeger, 10 Ct. App.,308 - even though the assessment upon which the taxes were paid did not properly describe his property, but on the contrary more aptly fitted some other property. 11 Ct. App., 17; Page vs. Kidd, 121 La., 2; Bernstine vs. Leeper, 118 La., 1099; Kellogg vs. Mc Fatter, 111 La., 1037, 1046, 1047; Lefebre vs. Negrotto, 44 A., 792.

The sale for taxes of property upon which the taxes have been paid is an absolute nullity. 44 A., 792; 115 La., 351,357.

Such a sale is specially excepted from the prescription of three years by Article 233 of the Constitution of 1898.

As we have come to the conclusion that plaintiff had paid the tax of 1909, it follows that plaintiff is not bound to reimburse to the defendant the price paid by him at tax sale. 44 A., 792.

It is true that attorney's fees, as such, are not allowed as costs to parties to a suit. 17 La., 263; 19 La., 357; 13 A., 193, 502; 14 A., 759, 311, 826; 48 A., 992; 52 A., 1071; C. P., 552; 125 La., 529; Sedgwick Damages Marginal pages 37, 95.

Nor are damages allowed when the parties have reasonable grounds to believe that they have a good cause of action which they are honestly prosecuting. 14 La., 48; 19 La., 360; 12 A., 873 (878); 14 A., 192 (193); 25 A., 230; 35 A., 698, 466; 36 A.,

333, 377; 15 Wall, 230; 48 A., 992; 52 A., 1535; 130 La., 658; 3 Am. & E. E. Law, 446.

But when either party is acting dishonestly or maliciously, he is liable in damages. Thus it has been said that "if it appeared that the defendant had no color of title when he instituted his petitory action, malice might perhaps be inferred from that circumstance". 14 La., 50; 2 R., 331, 336; 32 A., 697.

Attorney's fees were also allowed as an element of damage when the action of the defendant was wrongful and the services of an attorney became necessary to rectify the wrong. 106 La., 304, 307.

In 130 La., 557 (661) which was an action in the nature of slander of title and for damages against defendant for recording an adverse title the Court said: "Defendant acted without malice and in good faith, and hence owes no damages". The converse of this proposition must be true, that defendant owes damages if he acted with malice and in bad faith. As we have seen heretofore malice might be inferred from the time defendant knew he had no title.

The defendant may have been in good faith at the time he purchased at the tax sale against Becker in July, 1910. We do not find it necessary to decide this point. But after the suit filed by Burton against him in April 1912, and after the trial and judgment against him shortly thereafter, in which he acquiesced, knowledge was brought home to him that Jackson had no title whatever to those lands he pretended to sell to Becker, and that therefore Becker had no title either, for no one can transfer a greater right than he has himself. He must have understood and realized therefore that Jackson had perpetrated a fraud upon the real owners of the land, and upon Becker if he was innocent; and that inasmuch as Becker had no title to those lands, defendant could have acquired no title at a tax sale against Becker, and that by persisting in asserting title under such a tax sale he was assisting in giving continued effect to the fraud and was therefore in bad faith. Becker had made no defense to the Burton suit, which was a tacit admission of all the allegations of the petition. In

the present suit, the defendant did not produce Becker as a witness to deny all the allegations of fraud and conspiracy, or to maintain his good faith or the validity of his title. Nor was any attempt made to produce Jackson also of New Orleans.

We are therefore of opinion that when Dusenbury continued to assert title to the plaintiff's land after the judgment in the Burton case and after the institution of this suit in March 1914, he was not in good faith and that in legal intendment he acted maliciously. He denied plaintiff's title and asserted his own. He is therefore liable in damages. The only element of damage is the plaintiff's attorney's fees. The value of the lands has been fixed in plaintiff's title at $500. We think $300 rather excessive and will reduce the amount to $150.

It is not essential that plaintiff should have had actual physical corporeal possession of the lands claimed. Defendant himself only claimed civil possession. In such a case the Supreme Court has said in Atchafalaya Land Co. vs. Brownell Co., 130 La., 657:

> "A party claiming ownership by title duly recorded, but who is not in actual possession, may sue another, also out of possession, for slander of title, caused by his recording a title".

But the name of the action is immaterial. Suffice it to say that plaintiff had a cause of action when he alleged that he was owner of certain lands, and that defendant claimed ownership thereof by virtue of a recorded title, which was a cloud upon plaintiff's title which he wished to have removed. Act 38 of 1908 page 38 covers this case. *It reads as follows:*

" That in all cases where two or more persons lay claim to land by recorded title and where neither of said claimants are in actual possession of the land so claimed, either of the claimants may bring suit against one or all the adverse claimants in the same suit as defendants, to have the titles to the land adjudicated upon by the Court having jurisdiction of the property, and it shall not be necessary for the plaintiff to allege or prove possession in himself or the defendants, and this action shall be known as the action to establish title to real estate, and the judge shall decide which of the claimants are the owners of the

509

land in dispute, provided such judgment shall in no case be res adjudicato as to persons not made parties to the suit. "

~~Amended that said judgment be affirmed, the plaintiff pay the costs of appeal.~~

~~June , 1919.~~

It is therefore ordered that the amount of damages allowed by the judgment appealed from be reduced from Three Hundred Dollars to One Hundred and fifty dollars, and as thus amended that said judgment be affirmed, the plaintiff to pay the costs of appeal.

June 19ᵗ 1919